Junior T. **CHAPPELL**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 18324.

United States Court of Appeals
District of Columbia Circuit.

Argued June 17, 1964.

Decided Jan. 14, 1965.

Mr. Jackson M. Brodsky (appointed by this court), Washington, D. C., for appellant.

Mr. Anthony A. Lapham, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Joseph A. Lowther, Asst. U. S. Attys., were on the brief, for appellee.

Before WASHINGTON, BASTIAN and BURGER, Circuit Judges.

BURGER, Circuit Judge:

The only issue on this appeal from conviction of robbery is the admissibility of evidence seized after police entered an apartment where appellant was arrested.

On July 28, 1963, at about 5:00 a.m. two passengers directed their taxicab driver to an alley near Fourteenth and Belmont Streets, N.W., where they robbed him of his watch, wallet, and contents of his pockets, and some loose change from a cigar box. The two men then left the cab and ran down the alley toward Chapin Street, one block north of Belmont. Within 10 minutes the taxidriver reported the robbery over his cab radio, and within a few more minutes a police cruiser met him at Fourteenth and Chapin Streets where he related to the officers the details of the crime. He described his assailants as two male Negroes, six feet tall, and described their clothing. After cruising the area briefly, the officers observed two young news boys waiting for their papers in front of 1412 Chapin Street. They told the officers that "just a little while ago" they had seen two Negro males, both about six feet tall, run rapidly out of the alley, across Chapin Street, into the alley on the other side and down into the yard in back of 1411 Chapin Street. The officers promptly discovered that the backyard of 1411 Chapin Street was bounded by a seven foot high fence with only one opening to the alley. The alley ran north and south just to the west of 1411 Chapin Street. They thoroughly searched the yard and its contents, the rear of adjacent buildings, and a nearby parking lot to no avail. They discerned that the only possible exits from the yard were the steps and two doors. One door led to a furnace room and was locked; the other door led to the basement apartment of 1411 Chapin Street. The record shows that the officers concluded the two fugitives probably had fled to the basement apartment. Officer Rhoades, in uniform, accompanied by an officer in plainclothes, went around to the front door on Chapin Street, leaving two officers to cover the back door.

Officer Rhoades knocked at the front door of the basement apartment of 1411 Chapin Street between 5:30 and 5:45 a.m. that morning; the door was opened by Miss Ruby Gainey, the tenant. The officers testified that Miss Gainey was told they "had reason to believe that two subject [sic] who had just committed a robbery had entered this apartment." According to police testimony, she responded "that she didn't believe anybody

had come in there who had just committed a robbery, but we could come in and look." Miss Gainey testified that when she opened the door the police asked her if "two fellows came into [her] * * * house" and she said "yes."[1] She denied she had invited police in or given them permission to enter, but testified that they had entered "as though they were in a fever or something." The police arrested appellant and his co-defendant[2] in the apartment and seized property which the taxidriver later identified as having been taken from him by appellant and his co-defendant. At a pre-trial hearing, a motion to suppress this evidence was denied.

Appellant contends (1) that the stolen property should have been suppressed on the ground that the search during which it was found was without warrant and illegal; (2) that no circumstances existed which excused failure to secure a warrant; and (3) that there was no clear showing of a valid consent to police entry.

■ We do not understand appellant to deny that reasonable grounds for arrest of the two suspects existed after the entry; it seems to be conceded that if entry into the apartment was lawful, the arrest and subsequent incidental search were also lawful. Appellant invokes the fruit-of-the-poisonous-tree doctrine, contending that the entry itself and therefore the arrest were illegal, thus requiring that the evidence seized incident to the arrest be suppressed because it was the fruit of the primary illegality. If appellant is correct that the entry into Miss Gainey's apartment was unlawful, that would require the suppression of the evidence thereafter seized, under Miller v. United States, 357 U.S. 301, 78 S.Ct.

1190, 2 L.Ed.2d 1332 (1958). Hence the critical and dispositive issue is whether the standards governing police entry to a private dwelling were violated by the officers.

If the circumstances shown by this record would have justified a forcible entry after police identity and purpose were made known to the occupant who responded to police knocking, a fortiori their non-forcible entry would be lawful with or without consent. Hence we need not reach the disputed issue whether Miss Gainey did give a knowing and voluntary consent to police entry.[3] See Washington v. United States, 105 U.S. App.D.C. 58, 60, 263 F.2d 742, 744 (1959); Ellison v. United States, 93 U.S. App.D.C. 1, 3 & n. 5, 206 F.2d 476, 479 & n. 5 (1953).

■■ A forcible police entry may not be made unless authority and purpose are made known. See Miller v. United States, *supra*; Accarino v. United States, 85 U.S.App.D.C. 394, 179 F.2d 456 (1949); *cf.* Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); 18 U.S.C. § 3109 (establishing same prerequisites for entry with search warrant). On cross-examination Miss Gainey testified that when she opened the door, she recognized the authority of the officers by Rhoades' uniform; thus police authority was made known. Police testified Miss Gainey was told that they were seeking two robbery suspects whom they had reason to believe had fled into her apartment; Miss Gainey, as we have noted, said police asked her "did two fellows came [*sic*] into my house." Viewing her testimony against the background of all the circumstances, including the presence of a uniformed policeman at her door at that early morning hour so soon after the admitted entry of two men, we have no difficulty in con-

---

1. In her testimony, Miss Gainey fixed the time of arrival of appellant and his co-defendant at less than one hour before police arrival.

2. Appellant's co-defendant has moved to dismiss his appeal in this court and his motion has been granted.

3. In ruling on the motion to suppress, no finding was made on the claim that the occupant gave no valid consent to police entry. See Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649 (1951) (for criteria in assessing consented entry).

cluding that she knew the police purpose was to apprehend these men.[4]

■ We next must determine whether the officers had reasonable grounds, *i. e.*, probable cause, to believe that the suspected felons were present in the basement apartment of 1411 Chapin Street. Probable cause, of course, is a legal concept dependent, as we have so often said, upon probabilities and practicalities as they would reasonably have appeared at the time to a prudent, cautious and trained police officer. See Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Dixon v. United States, 111 U.S.App.D.C. 305, 306–307, 296 F.2d 427, 428–429 (1961); Ellis v. United States, 105 U.S.App.D.C. 86, 88, 264 F.2d 372, 374, cert. denied, 359 U.S. 998, 79 S.Ct. 1129, 3 L.Ed.2d 986 (1959); Bell v. United States, 102 U.S.App.D.C. 383, 387, 254 F.2d 82, 86, cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958). Police in this case were aware of the following facts: (a) that two men had committed a robbery one block away in an alley adjacent to 1400 Chapin Street; (b) that the two had fled down that alley; (c) that two men fitting the descriptions given by the robbery victim had been seen running down the alley at that time, across Chapin Street and into the backyard of 1411 Chapin Street; (d) that searches of the vicinity had uncovered no leads, but strongly suggested that the robbers had entered some nearby house; (3)

that the only available exits from the backyard were the entry gate from the alley and the door to the 1411 apartment; (f) that the person answering their knock on the front door had virtually conceded two men had entered. These circumstances, including the time factors, warranted a prudent and cautious police officer on the scene to draw an inference that the two men seen running down the alley and into the backyard of 1411 Chapin Street at the time of the robbery were the two robbers, and that they were then present in the basement apartment. Requisite probable cause was thus completely established.

In Morrison v. United States, 104 U.S.App.D.C. 352, 357, 262 F.2d 449, 454 (1958), we said: " * * * under the authorities officers without a warrant cannot enter, even without actually breaking, a private dwelling to search for a suspected felon, no permission being given and no circumstances of necessitous haste being present." Even under this stringent standard the officers would have been warranted in making a forcible entry upon making known their authority and purpose, under the circumstances shown by this record.

■ In light of the facts known to the officers prior to their knocking on the door and the reasonable inferences from Miss Gainey's reply, a prudent and cautious police officer could reasonably have concluded that immediate entry to the apartment was imperative. Had the suspects, for example, disposed of or destroyed the stolen goods while a warrant was being sought, the delay in entering would have frustrated effective police action and investigation, and perhaps rendered a just verdict impossible.[5] We

---

4. To require that in these circumstances the police officer expressly state a purpose to apprehend the quarry he is pursuing would be to hamper law enforcement with a useless formalism. "It may be that, without an express announcement of purpose, the facts known to officers would justify them in being virtually certain that the petitioner already knows their purpose so that an announcement would be a useless gesture."

Miller v. United States, *supra*, 357 U.S. at 310, 78 S.Ct. at 1196, citing People v. Martin, 45 Cal.2d 755, 290 P.2d 855 (1955).

5. That delay may be encountered, however, is not controlling on whether a warrant is required; securing a warrant always involves some additional time. But a forcible entry into a house is justified only when "an immediate major crisis in

find the totality of circumstances in this case reveals that the police entry here was made in "necessitous haste" after a proper manifestation of authority and purpose. Consequently, the pursuant arrest and search were valid.

Affirmed.

the performance of duty affords neither time nor opportunity to apply to a magistrate." District of Columbia v. Little, 85 U.S.App.D.C. 242, 246, 178 F.2d 13, 17, 13 A.L.R.2d 954 (1949), aff'd on other grounds, 339 U.S. 1, 70 S.Ct. 468, 94 L. Ed. 599 (1950). As we have often said, we must evaluate the circumstances as they would appear to a prudent, cautious and trained police officer; a presumption of regularity attends the actions of policemen and those judgments which would have been reasonably made by the hypothetical "prudent officer" are attributed to the actual officers in question, unless other circumstances indicate the inappropriateness of so doing. We do not require testimony on the processes of deduction actually employed; the critical factor is whether the actions of police under the circumstances shown to exist were consistent with what a reasonable and prudent officer should have done in those circumstances. *Cf.* Dixon v. United States, 111 U.S.App.D.C. 305, 306–307, 296 F.2d 427, 428–429 (1961); Ellis v. United States, 105 U.S.App.D.C. 86, 88, 264 F.2d 372, 374, cert. denied, 359 U.S. 998, 79 S.Ct. 1129, 3 L.Ed.2d 986 (1959).