**Javan J. DURHAM, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**Nos. 4308, 4309.**

District of Columbia Court of Appeals.

Argued Sept. 6, 1967.

Decided Feb. 7, 1968.

James S. Brocard, Washington, D. C., for appellant.

Carl S. Rauh, Asst. U. S. Atty., with whom David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before HOOD, Chief Judge, and MYERS and KELLY, Judges.

KELLY, Associate Judge:

Appellant was convicted by a jury of assault and of carrying a deadly weapon.[1] This appeal challenges the sufficiency of the proof of identification and the legality of appellant's arrest and search without a warrant.

The testimony is that on September 2, 1966, at about 8:30 p. m., the complaining

1. D.C.Code 1967, §§ 22-504, 22-3204.

witness, a seventeen year old girl, went to an apartment building in this city to clean the apartment of a man for whom she did part-time domestic work. As there was no response to her repeated knocking on the door she waited around in the hallway for approximately an hour to an hour and a half. At some point during this time appellant passed her on his way out of the building. Upon his return, at about 10:00 p. m., appellant again came upon complainant in the hallway and forced her upstairs while threatening her with a penknife. He took her into an apartment, where she observed a woman lying on the bed, apparently asleep, and an elderly man, quite drunk, sitting at a table. After a lapse of 15 or 20 minutes appellant then took her to a vacant apartment across the hall and forced her to disrobe by hitting her and holding the knife to her throat. Appellant also removed his clothes; then sat down on the floor and started drinking from a bottle of wine. At this point complainant jumped up, knocked appellant over, and ran from the room. She obtained a robe from a woman in an apartment on the floor below, and had a friend from a nearby gas station drive her home. She related the details of the alleged assault to her sister, and together they returned to the gas station where the sister put in a call to the police. When the officers arrived at the apartment building where complainant was waiting they found her still visibly upset from her experience. She took them first to the vacant apartment where some clothing and an empty wine bottle were found on the floor. Complainant then directed the officers to the apartment to which appellant had first taken her, where she thought he might live. The door was standing open and, after knocking several times and getting no response, the officers entered the apartment. Appellant was found lying on the bed with the woman, asleep, and the elderly man was asleep on a cot in the back. The officers shook appellant awake after complainant had identified him as her assailant and placed him under arrest. A pocketknife was recovered from a pair of trousers appellant attempted to put on which, according to the complainant, he had previously been wearing.

■ The allegation that the Government failed to prove identity beyond a reasonable doubt is based upon the fact that complainant admittedly told several people, including the police officers, that her assailant was white when in fact appellant was colored. One witness also testified that complainant had pointed out the elderly white man as the one who assaulted her rather than appellant. It is thus argued that the testimony was sufficiently dubious to necessarily raise more than a reasonable doubt as to the assailant's true identity and that it was therefore error to deny appellant's motion for judgment of acquittal.[2] But there was other testimony that complainant had made a positive identification of appellant the night of the alleged assault and she also identified appellant at trial, although she was still unable to tell his race. We believe that in these circumstances, with such contradictory testimony in the record, the trial court correctly ruled that the question of identification was one of fact for the jury. Thomas v. United States, D.C.Cir., 387 F.2d 191 (decided May 4, 1967).

It is next alleged that it was error to deny appellant's oral motion to suppress the introduction of the pocketknife into evidence because it was obtained as a result of an unlawful search and seizure.

The validity of appellant's arrest and the ensuing search depend upon the legality of the entry into the apartment. In Morrison v. United States, 104 U.S.App.D.C. 352, 356, 262 F.2d 449, 453 (1958), upon which appellant relies, the court posed the question:

"Does a policeman without a warrant, but with probable cause to believe that a fel-

---

2. Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, cert. denied, 331 U.S. 837, 67 S.Ct. 151, 91 L.Ed. 1850 (1947).

ony has been committed and that the felon is within his dwelling house, have a right to enter the dwelling when there is no response to repeated knocking on the door and when there is no urgency for an arrest?"

and answered: [3]

"We think that under the authorities officers without a warrant cannot enter, even without actually breaking, a private dwelling to search for a suspected felon, no permission being given and no circumstances of necessitous haste being present."

Morrison was convicted of a perverted act on a young boy, described as a "crime of gentleness" because there was no breach of the peace, no disturbance and no injury. The boy knew Morrison and directed the police to his house, in the daytime, about two hours after the alleged offense. After knocking and receiving no answer, the police entered Morrison's unfinished house through an opening in the basement, proceeded upstairs, and went through another opening into the living quarters. Although the entry was made for the purpose of searching for a suspected felon whom the officers believed to be in the house, there was no arrest since it turned out that Morrison was not there. However, a handkerchief purporting to bear evidence of the offense was taken from the room where the incident allegedly occurred. The court reversed the conviction, giving as one ground for its decision that the entry without a warrant, either for an arrest or for a search, was illegal.

■ It is not often that circumstances of necessitous haste are sufficiently present to justify an entry into a private dwelling without a warrant. Generally such an entry is held to be illegal absent some com-

pelling reason to excuse the failure to secure a warrant. McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Accarino v. United States, 85 U.S.App.D.C. 394, 179 F.2d 456 (1949).[4]

Exigent circumstances, however, have been held to excuse an entry and search without a warrant in a case of armed robbery. Warden Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). There the Court stated: [5]

"We agree with the Court of Appeals that neither the entry without warrant to search for the robber, nor the search for him without warrant was invalid. Under the circumstances of this case, 'the exigencies of the situation made that course imperative.' McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153. The police were informed that an armed robbery had taken place, and that the suspect had entered 2111 Cocoa Lane less than five minutes before they reached it. They acted reasonably when they entered the house and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape."

And in Chappell v. United States, 119 U.S.App.D.C. 356, 342 F.2d 935 (1965), a

---

3. 104 U.S.App.D.C. at 357, 262 F.2d at 454.

4. See Williams v. United States, 105 U.S. App.D.C. 41, 263 F.2d 487 (1959) (con-

curring opinion), for a succinct summary of authorities on illegal search.

5. 387 U.S. at 298–299, 87 S.Ct. at 1645.

robbery case, it was held that an entry without a warrant was legal when made under circumstances of immediate urgency. There, in an alley, a taxi driver was robbed by two men who thereafter fled. The police responded within 10 minutes and in the course of cruising the area were told by several boys that they had seen two men run out of the alley and into the yard behind a certain house. A search of the yard revealed that no one was there, but also revealed that the only exit therefrom was into the house in question. The officers gained entry to the house and arrested two suspects. The court held that even under the stringent standards of *Morrison*, the entry was legal. It stated: [6]

"In light of the facts known to the officers prior to their knocking on the door and the reasonable inferences from Miss Gainey's reply, a prudent and cautious police officer could reasonably have concluded that immediate entry to the apartment was imperative. Had the suspects, for example, disposed of or destroyed the stolen goods while a warrant was being sought, the delay in entering would have frustrated effective police action and investigation, and perhaps rendered a just verdict impossible. We find the totality of circumstances in this case reveals that the police entry here was made in 'necessitous haste' after a proper manifestation of authority and purpose. Consequently, the pursuant arrest and search were valid."

In Washington v. United States, 105 U.S. App.D.C. 58, 263 F.2d 742, cert. denied, 359 U.S. 1002, 79 S.Ct. 1142, 3 L.Ed.2d 1032 (1959), the conviction was for housebreaking and assault on a thirteen year old girl. Between midnight and 1:00 a. m. an intruder entered the bedroom where the child and her grandfather were sleeping. The girl awakened and recognized the man as one she had seen the day before talking to a neighbor boy. The police obtained his name from the boy and were told that he frequented a nearby liquor store. They obtained his address from the proprietor of the store, where he was an occasional employee, and reached the address about 1:00 a. m. In affirming the conviction the court not only distinguished *Morrison*, but said: [7]

"The record reveals an unbroken police search for the intruder from the moment they were called immediately after he fled. This search included a careful step-by-step process of identification, location and finally interrogation before arrest. At the moment the police were admitted to the house, they had ample probable cause to believe that appellant had committed a felony. The statements of the young girl, the neighbor boy, the liquor store proprietor, and appellant's neighbors adequately identified appellant as the intruder. When the police partially verified these statements by determining that a man named Artis did in fact live at a given address, they had established adequate probable cause, and were justified in making an arrest without a warrant. We need not decide whether police entry was by permission or invitation, cf. Judd v. United States, 1951, 89 U.S.App.D.C. 64, 190 F.2d 649; Williams v. United States, 105 U.S.App. D.C. 41, 263 F.2d 487 since 'if there was probable cause to make an arrest—as we hold there was—there was justification for at least the peaceable entry which here was made.' Ellison v. United States, 1953, 93 U.S.App.D.C. 1, 3, 206 F.2d 476, 479. But see Miller v. United States, 1958, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (forcible rather than peaceable entry)."

The question, then, is whether such circumstances of necessitous haste are present in this case as to justify the entry into appellant's apartment and his arrest without a warrant. As in *Morrison*, we start from the conceded premise that the officers had

6. 119 U.S.App.D.C. at 359–360, 342 F.2d at 938–939.

7. 105 U.S.App.D.C. at 60, 263 F.2d at 744.

reasonable cause to believe that a felony had been committed and that the felon was within the apartment. The critical distinctions to be made, according to the Government, are that this was a violent crime rather than "a gentle one"; that it involved the use of a knife; that immediate identification was vital since complainant had not seen appellant before, and that the arrest was made in the course of an uninterrupted police investigation. It argues that in this case, when confronted with a combination of circumstances demonstrating the need for immediate action, the conduct of the officers was clearly reasonable. We agree.

The police had been informed that an unknown man, without provocation or warning, accosted a young girl whom he did not know in the hallway of an apartment building and forced her first into one apartment and then into another vacant apartment across the hall, using a knife to terrify and subdue her. It appeared that but for her fortuitous escape, after being made to undress, the assault would have been even more violent and vicious, and it was also apparent that upon their arrival at the apartment building she was still frightened and upset by her experience. When they investigated the empty apartment to which complainant led them they found corroboration of her story in the clothes and the empty wine bottle on the floor. At this point the officers had probable cause to believe that a felony had been committed and that the felon was in the apartment across the hall. It was also reasonable for them to believe it necessary, in the course of effective police action and investigation, that the felon be identified and apprehended at once without seeking a warrant. The critical factor was that the officers did not know the felon's name, nor were they, or complainant, sure that he actually lived in that apartment, so that absent some immediate action the felon might never be apprehended. The crime was a serious one, and the criminal, who had been drinking [8]

and carried a knife, was certainly a potential danger while he was at large. The importance of immediate arrest was emphasized by the need to establish his identity as well as to prevent the possible disposition of an instrumentality of a crime. We hold that the officers acted reasonably when, in the course of an uninterrupted police investigation and under a totality of circumstances showing the need for haste, they entered appellant's apartment and made the arrest. Accordingly, the ensuing search was proper, and the trial court correctly denied the motion to suppress.

Affirmed.

---

8. There was also evidence that appellant had taken some sort of pill.