**UNITED STATES of America,**
**Appellee**

v.

**Clarence HOLIDAY et al., Appellant**
**in No. 71–1456.**

**Appeal of William HOLIDAY.**

**Nos. 71–1456, 71–1457.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 27, 1972.

Decided March 24, 1972.

James S. Carroll, New York City, for appellant.

James D. Fornari, U. S. Atty., Newark, N. J., for appellee.

Before McLAUGHLIN, VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

GERALD McLAUGHLIN, Circuit Judge.

Appellants, Clarence and William Holiday, appeal from their conviction of robbing a federally insured New Jersey bank of $6,800.59 in violation of 18 U.S.C. § 2113(a). Clarence Holiday was also convicted of violating 18 U.S.C. 2113(d) by using a dangerous weapon and putting the lives of several bank employees and customers in jeopardy. It is from these convictions that appellants appeal.

Appellants allege that there was insufficient probable cause for the F.B.I. agents to enter the house located at 68 Cypress Street, Newark, New Jersey,

and therefore any evidence found in said house was inadmissible at the trial. In reviewing these appeals and keeping the totality of all the surrounding circumstances in mind, we find there was ample cause to enter said house and that items in the latter which were within plain view of the agents were correctly admitted into evidence.

On January 8, 1970, at approximately 10:30 in the morning, a Newark branch of the First Jersey National Bank was robbed by three armed men. The Newark Police Department and the F.B.I. promptly investigated the crimes. The facts developed at the scene of the robbery indicated that an additional two men had waited in a Cadillac limousine outside the bank and after the robbery drove the three actual robbers away. The license number of the getaway car was given to the investigators. Shortly thereafter the vehicle was located. One of the investigating agents had previously been informed that a bank robbery was being planned by William Holiday, Paul Simmons and a third individual. He knew that the brother of Paul Simmons lived at 68 Cypress Street which was in the nearby area, the search was therefore directed to that house.

Two F.B.I. agents proceeded to go to the front door of the house but before they could knock on the door, they heard shots and the cry "They are getting away. They're running out the back, they have guns, watch it." Believing there still might be someone in the house agents entered it and saw in plain view a pair of heavy shoes, water on the floor from the soles of the shoes, a ski mask, and other clothing including a sweat shirt similar to that worn during the robbery. Also, on the mantle was a set of two keys from a General Motors car.

The appellants contend that the police should have obtained a search warrant before going into the house. That course of action would have necessitated abandoning the pursuit of the armed men fleeing from the rear of the house, so that the house remained covered while the agents obtained a search warrant. Professional know how called for the two agents at the house to stay there while the remaining men pursued those who fled. It is obvious that at this time the officers had no way of knowing if the house was empty. Clearly the exigencies of the situation made the course of action taken, imperative and lawful. See McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

In a similar problem involving a warrantless arrest and search Judge (now Chief Justice) Burger said, "In the light of the facts known to the officers prior to their knocking on the door and the reasonable inferences from Miss Gainey's reply, a prudent and cautious police officer could reasonably have concluded that immediate entry to the apartment was imperative. . . . We find the totality of circumstances in the case reveals that the police entry here was made in 'necessitous haste' after a proper manifestation of authority and purpose. Consequently the pursuant arrest and search were valid." See Chappell v. United States, 119 U.S.App.D.C. 356, 342 F.2d 935, 938–939 (1965). Also United States v. Rose, 440 F.2d 832 (6 Cir. 1971). In the light of the unmistakable circumstances surrounding the situation before us we are satisfied that the F.B.I. had probable cause to enter the 68 Cypress Street premises. Once inside the house strong evidence was in plain view and thus lawfully seized. See Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Creighton v. United States, 132 U.S.App.D.C. 115, 406 F.2d 651 (1968).

■ Appellants argue that the circumstances surrounding the pre-trial photographic identification were so suggestive as to give rise to a very substantial likelihood of misidentification and thereby a denial of due process of law. The evidence simply does not warrant such a finding. The witnesses

were shown a selection of nine photographs, all black and white "mug" shots, one of which was of the appellant, Clarence Holiday. The remaining eight pictures were chosen because they were similar to appellant in race, age and facial characteristics. Each witness who identified Clarence Holiday testified that he or she was taken aside and individually shown a group of nine photographs and asked if he or she could recognize anyone. Each of the three witnesses testified that he or she, in fact, did look at these photographs and while doing so, the F.B.I. agent made no comment as to whether or not anyone of the individuals shown in the pictures was a suspect in the crime before us or had been apprehended as a potential suspect. The agent himself testified that he made no comment while each one of the individuals was examining the photographs. He further testified that he interviewed each witness alone and out of the hearing of the others. Nothing was brought out in the testimony to indicate that the viewing was conducted in an impermissible fashion. It is obvious from the record that each witness, who identified Clarence Holiday had ample opportunity to observe him at the bank and did so. The pre-trial photographic identifications in no way influenced their subsequent in-court testimony.

■ Appellants also contend that the use of photographs as a means of pre-trial identification violates appellants' right to counsel under the Sixth Amendment. There is no doubt that a defendant in a criminal trial has the right to counsel at all critical stages of the proceeding. The Supreme Court ruled that this includes the pre-trial lineup. See United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). This Circuit has held that " . . . the rule of the Wade case applies to pre-trial photographic identifications of an accused who is in custody." See United States v. Zeiler, 427 F.2d 1305, 1307 (3 Cir. 1970). The Supreme Court remanded Wade to give the Government an opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspects other than line-up identification. The Third Circuit likewise has recently held concerning pretrial photographic identifications, "the witnesses' in-court identifications are admissible only if the Government establishes by clear and convincing evidence that they have an origin independent of any identification made outside the presence of counsel." See United States v. Zeiler, 447 F.2d 993, 995 (3 Cir. 1971). Under the facts of this appeal the in-court identification of Clarence Holiday was definitely of an origin other than the pre-trial photographic identification, that origin being the actual robbery. The government has solidly met its burden of proving that the witnesses were not influenced by their pre-trial photographic identification and therefore the witnesses' subsequent in-court identifications were competent and admissible.

■ Appellant, William Holiday asserts that there was insufficient evidence to warrant his conviction. We find this argument without merit. The weight of the evidence was more than sufficient to sustain the jury verdict. A summary of the evidence against William Holiday is as follows. A matter of hours after the robbery he fled from 68 Cypress Street in the company of at least one individual who was positively identified by three witnesses as having taken part in the robbery. He subsequently appeared with a hand gun at the rear of 68 Cypress Street stating "Some people is trying to take money from me up the street," and asking to be hidden. When this request was denied, he then offered money in return for a hiding place. The amount of money given for that favor was $280. When he was apprehended a short time later, it was discovered he had $919 in his possession. The total of these amounts is reasonably close to one-fifth of the amount taken in the robbery. It is almost exactly the amount found by the Newark Police on the back porch of 68 Cypress Street ($1175). Nor could he satisfactorily ex-

plain why he had such a large sum in his possession at that time. At most the guilt or innocence of William Holiday was a jury question. There was ample, believable evidence that he was a principal in the robbery here involved.

The judgments of the district court as to appellants Clarence Holiday and William Holiday will be affirmed.