UNITED STATES of America, Plaintiff,

v.

Stephen Keith SPEERS and James Lee Nowlin, Defendants.

Cr. No. 77–00013–D.

United States District Court,
W. D. Oklahoma.

Feb. 3, 1977.

David L. Russell, U. S. Atty., by Richard F. Campbell, III, Asst. U. S. Atty., Oklahoma City, Okl., for plaintiff.

Larry M. Spears, Oklahoma City, Okl., for defendant Speers.

John P. Sopher, Oklahoma City, Okl., for defendant Nowlin.

## ORDER

DAUGHERTY, Chief Judge.

The above Defendants are charged in a two-count Indictment with stealing and converting to their own use property of the United States and receiving, concealing or retaining property of the United States with intent to convert such property to their own use knowing the same to have been stolen pursuant to 18 United States Code § 641 and 18 United States Code § 2. The alleged property of the United States consists of five items of Sony video equipment. The Defendants have each filed Motions to Suppress.

One Motion of each Defendant seeks to suppress as evidence any identifications made by reason of any photographs on the basis that said identifications were tainted. The Plaintiff has responded to these Motions stating that no identification of either Defendant was made by reason of a photograph. On the basis of such Response, each Defendant withdrew his Motion to Suppress Identification by reason of tainted photographs.

Each Defendant also moved to suppress as evidence all evidence obtained as a result of his arrest or any other form of search on the basis that any such evidence was obtained illegally in violation of Defendants' rights. In response to said Motions the Plaintiff asserts that the five items of property mentioned in the Indictment were

seized from Defendants' motor vehicle in compliance with the law citing *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 and *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706. Plaintiff also cites *United States v. Thomas,* 289 F.Supp. 364 (S.D.N.Y.1968).

An evidentiary hearing has been conducted on the latter Motions which reveals that a locksmith by the name of James R. Perry (Perry) was called to a shopping center parking lot to make a set of keys for a Ford van. He proceeded to the designated location, identified the two Defendants as being there in possession of the van and made two sets of keys for the same. Perry noticed that the van had a Texas tag. As he made out a bill in the amount of $14.50 for the keys he was told by Defendant Speers that they had no money but they would trade him a Sony TV (which was a Sony video monitor), one of the five items of property described in the Indictment, for the keys. Perry advised that this could not be done unless he called his shop, which he did, and as a result of this conversation advised the Defendants that he would have to have the serial number of the Sony and some identification before the exchange could be made. He did obtain the serial number of the Sony, Speers said he had no identification and Defendant Nowlin produced a drivers license but he snatched the same from Perry as Perry was in the act of writing down the drivers license number. At this juncture Perry called the police and reported possible stolen property in the possession of Defendants in their van in the shopping center parking lot.

When a police officer reached the scene Perry advised him of the foregoing events. The police officer noticed that the van had an expired 1975 Texas tag. The officer asked the Defendants about the exchange of the Sony TV for the key and they acknowledged that such an exchange had been offered. The officer asked the Defendants if they minded if he checked the Sony TV. The Defendants said they had no objection to his doing so and pointed to the TV set in the space between the two front seats in the van. As the officer undertook to examine the Sony TV he saw two tablets on the floor of the passenger side of the pickup. The tablets were white and yellow. Upon this discovery the Defendants were arrested for possession of a controlled substance, they were advised of their rights and as another police car had arrived each Defendant was put in the back of a different police car. The arresting officer thought the pills were amphetamines but he was not sure. No field test was made on the pills. A NCIC check was made on the Sony TV monitor. The report came back that it was clear. Following the arrest of Defendants the officers called for a wrecker and then made an inventory of the vehicle at the scene prior to the arrival of the wrecker. The officer testified that such an inventory was standard procedure. In making the inventory they found the other four items of Sony equipment described in the Indictment. When asked about whose van it was the Defendants said that it belonged to a person by the name of Rick whose last name was unknown and from whom they had borrowed the same in Shawnee, Oklahoma. Also that they bought the Sony equipment at a tavern for $150.00. The evidence did not disclose whether charges have been filed with reference to the two pills (two additional pills were found as the vehicle was inventoried); or whether the two pills were a controlled substance.

In arguments counsel for Defendants acknowledge that the officer had a right to be where he was in the parking lot near the van and was given the right by Defendants to reach in the van and get the Sony TV which was in plain view between the front seats of the van for the purpose of examining the same. Defendants contend, however, that the officer did not know that the two pills were a contraband controlled substance, that the arrest of Defendants by reason of the two pills was only on suspicion and was an illegal arrest and that anything following in the way of a search or inventory of the van was tainted by the illegal arrest.

Plaintiff counters the argument of Defendants by saying that under the circumstances of this case including the involvement of a mobile motor vehicle the officer had probable cause to search the vehicle for stolen property and that such search was not dependent upon the requirement of a valid arrest for either the possession of a controlled substance or any other offense. Plaintiff argues that such probable cause to search the van consisted of the information furnished him by locksmith Perry and the van having expired foreign license plates. Plaintiff cites *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) for the proposition that if there is probable cause to believe a crime is or has been committed, an automobile, because of its mobility, may be searched without a warrant in circumstances that would not justify a warrantless search of a house or office; that here the car was mobile (keys had been made to allow the same to be moved); that exigent circumstances were present and that with the knowledge then possessed by the officer there was probable cause to suspect stolen property to be in the van which permitted the officer to make a warrantless search of such van; that stolen property found in such search was legally obtained and hence is admissible in evidence herein. The Government also appears to urge that following the arrest of Defendants for possession of a controlled substance, whether such arrest was legal or not, required the officer to impound Defendants' vehicle for safekeeping following which under standard police department procedure an inventory of the contents of the vehicle was made; that stolen property found in such inventory was legally obtained and hence is admissible in evidence herein. In this regard Plaintiff cites the recent case of *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

 There can be no doubt that the warrantless seizure of the Sony TV located between the front seats of the van was not constitutionally forbidden. There is no contention that the consent given by Defendants to the seizure was involuntary. It is well settled that one of the specifically established exceptions to the requirement of both a warrant and probable cause is a search that is conducted pursuant to a voluntary consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). It is equally well established that incriminating objects which are visible and accessible, falling in plain view of an officer who has the right to be in a position to have the view, may be seized without a warrant. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). Whether the issue is approached from the plain view standpoint or from that of consent, the seizure of this item was reasonable and violated no constitutional right of the Defendants.

 The other four items of Sony equipment described in the Indictment were also the fruits of constitutionally permissible actions by the police officers. Warrantless searches of automobiles have usually been upheld where the police have exercised a form of custody or control over the automobile. In *Harris v. United States,* supra, the automobile had been identified leaving the site of the robbery and impounded as evidence. An examination of the automobile in accordance with a regulation of the local police department was made which exposed the criminal evidence to plain view. In *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), the accused was arrested for selling heroin and his automobile was impounded pending forfeiture proceedings. Over four months later a search was conducted. In *Cady v. Dombrowski,* supra, the automobile had been involved in an accident and towed by police to a privately owned service station. It was later searched by police, as a part of the department's standard procedure to retrieve a revolver, which, it was believed, had been in the possession of the driver of the automobile, a Chicago police officer. The Court in *Cady* analyzed the justification for these searches as follows:

"In *Harris* the justification for the initial intrusion into the vehicle was to safeguard the owner's property, and in *Coo-*

*per* it was to guarantee the safety of the custodians. Here the justification, while different, was as immediate and constitutionally reasonable as those in *Harris* and *Cooper* : concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle." 413 U.S. at 447, 93 S.Ct. at 2531.

The latest expression of the Supreme Court on this type of police procedure was in *South Dakota v. Opperman,* supra, decided July 6, 1976. There the car had been impounded for multiple parking violations by the police who following standard procedures inventoried the contents of the car and the Court pointed out:

"The decisions of this Court point unmistakably to the conclusion reached by both federal and state courts that inventories pursuant to standard police procedures are reasonable."

428 U.S. at 372, 96 S.Ct. at 3098.

Here the Defendants had been taken into custody and the van had been impounded for removal to a parking lot by a private wrecker operator. The police inventoried the contents pursuant to established departmental policy. As noted by the Court in *Opperman* :

"When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody, *United States v. Mitchell,* 458 F.2d 960, 961 (CA9 1972); the protection of the police against claims or disputes over lost or stolen property, *United States v. Kelehar,* 470 F.2d 176, 178 (CA5 1972); and the protection of the police from potential danger, *Cooper v. California,* 386 U.S. at 61–62 [87 S.Ct. 788, 790]. The practice has been viewed as essential to respond to incidents of theft or vandalism."

At 369, 96 S.Ct. at 3096.

The caretaking procedure by the Oklahoma City Police Department likewise is designed to serve these purposes. The inventory here was necessary to protect the car owner, to protect the police and the public from any potential danger, and to protect the city and the officers from claims of lost or stolen property. As in *Opperman* there is no contention that this standard procedure, basically the same as that followed by police departments throughout the country, was a pretext concealing an investigatory police motive. There is nothing in the circumstances of this case to condemn the conduct of the police in proceeding with the inventory as "unreasonable" under the Fourth Amendment.

 The routine, administrative, caretaking inventory is not dependent upon a finding of "probable cause". *South Dakota v. Opperman,* 428 U.S. at 370, n. 5, 96 S.Ct. 3092. Similarly, the validity of the arrest is irrelevant to the validity of the inventory search. The procedure was invoked by the caretaking role in which the police found themselves after the arrest. The impoundment was justified, and in fact mandated under State law (47 O.S.A. § 22.20). Because the motor vehicle was lawfully within governmental custody, the inventory was necessary, without regard to the arrest, to safeguard the interests described above, i. e. protection of the police from danger, protection of the police against claims and disputes over lost or stolen property, and protection of the owner's property while it remains in police custody. It was the lawful impoundment and not the arrest which triggered the inventory procedure and rendered the intrusion "reasonable" within the meaning of the Fourth Amendment. Even if there had been no arrest, the conclusion would be the same.

 Moreover, if the claim were made that the protective procedure was a subterfuge for a criminal investigation, and there is no evidence to support such a claim, the court finds that there was exigent circumstances and probable cause to justify the search. The officers knew that the defendants had sought to satisfy a $14.50 bill for the keys by trading a much more valuable Sony TV. The defendants were in a vehicle

with an expired Texas tag for which allegedly the keys had been lost and were unable or unwilling to furnish identification. The circumstances were utterly inconsistent with lawful conduct. In considering whether the Constitution required a search warrant under these circumstances, they must be evaluated as they would have appeared to prudent, cautious and trained police officers. *United States v. Miller,* 460 F.2d 582 (CA10 1972); *Trusty v. State of Oklahoma,* 360 F.2d 173 (CA10 1966); *Murray v. United States,* 351 F.2d 330 (CA10 1965), cert. denied, 383 U.S. 949, 86 S.Ct. 1207, 16 L.Ed.2d 211; *Chappel v. United States,* 119 U.S.App.D.C. 356, 342 F.2d 935 (1965). As pointed out by the court in *United States of America v. Nevarez-Alcantar,* 495 F.2d 678, 681 (CA10 1974):

"In determining probable cause 'practical considerations of everyday life' must prevail. *Brinegar v. United States,* 338 U.S. 160, [69 S.Ct. 1302, 93 L.Ed. 1879] (1949); *United States v. Romero,* 484 F.2d 1324 (10th Cir. 1973). Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a prudent man into believing that an offense has been or is being committed. *Beck v. Ohio,* 379 U.S. 89, [85 S.Ct. 223, 13 L.Ed.2d 142] (1964); *Draper v. United States,* 358 U.S. 307, [79 S.Ct. 329, 3 L.Ed.2d 327] (1959); *United States v. Smaldone,* 485 F.2d 1333 (10th Cir. 1973); *Taylor v. United States,* 334 F.2d 386 (10th Cir. 1964)."

The test for probable cause is simply one of common sense. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *United States v. Johnson,* 461 F.2d 285 (CA10 1972). By this practical, objective standard probable cause existed for an investigatory search. Exigent circumstances were present because the vehicle could be quickly moved from the locality. *Carroll v. United States,* supra. When there is both probable cause and a mobile vehicle, under the teaching of *Chambers v. Maroney,* supra, a search without a warrant is authorized. *Stone v. Patterson,* 468 F.2d 558 (CA10 1972). Thus, the search of the van without a warrant, on the record here, if placed in the criminal context, nevertheless was permissible under this long recognized exception to the warrant requirement of the Fourth Amendment.

For the foregoing reasons the Motions to Suppress by the Defendants will be denied.

IT IS SO ORDERED.