UNITED STATES of America, Plaintiff,

v.

James W. FAIR, Marie J. Murray, Defendants.

No. 575–59.

United States District Court
District of Columbia.

Sept. 15, 1959.

572

police were informed by a person considered reliable that a "Jimmy" had sold him narcotics at 1134 6th Street, N. E., D. C., Apartment A, but he did not know whether there were any more narcotics on the premises. Surveillance of the premises was commenced but nothing suspicious was observed. Two days later, on May 29, at about 2:30 p. m., another reliable narcotics informant contacted the police and reported that a Jimmy Fair had sold him narcotics the previous night. Arrangements were then made for this second informant to telephone Jimmy Fair in an attempt to set up another purchase from him. About 8:30 p. m. that same evening, the telephone call was placed. Listening in on an extension phone, the police heard the person called identify himself as "Jimmy Fair" and agree to sell narcotics to the informant provided it could be done within fifteen minutes as he was preparing to go downtown. The informant said he would come right over. After searching the informant and making certain that he had no narcotics on his person, the police and the informant left for the defendant's apartment. Nine dollars in marked money had been given the informant to make the purchase.

Under police observation, the informant entered the premises about 8:40 p. m. with the marked money, and reappeared a few minutes later. He gave the police officers six capsules, reasonably believed to be narcotics, which he said he had purchased from the defendant with the marked money. He also stated that he had seen the defendant take the six capsules from a small plastic vial he had had in his pocket and which contained a large quantity of capsules. The informant did not have the marked money on his person.

The police officers immediately entered the apartment house and went to the defendant's apartment. They knocked at the door and announced that they were the police and were following marked money into the premises for a purchase of narcotics. Upon hearing from inside the apartment what has been described

Joseph A. Lowther, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Edward L. Genn, Washington, D. C., for defendants.

YOUNGDAHL, District Judge.

This cause came on to be heard on defendant Fair's motion to suppress evidence seized from his apartment. The Court has heard testimony and oral argument and considered the defendant's memorandum.

The Court finds the facts to be as follows: on or about May 27, 1959, the

as "shuffling feet", they knocked again. After waiting a short while, they kicked the door and it came open. The defendant was observed flushing the commode. He was immediately placed under arrest and although he was advised that he did not have to make any statements, he told the officers that he had just flushed down the vial with forty capsules of narcotics. He also stated that he had sold eleven capsules to the co-defendant who had been observed trying to throw them away when the police entered the apartment. Ninety-two capsules of narcotics were found in a jar in the bathroom. No arrest or search warrant had been obtained.

The defendant complains that the arrest was illegal as it was not founded on probable cause, and secondly, even assuming that probable cause for the arrest existed, the officers illegally forced their way into his apartment. Either proposition, it is contended, compels the suppression of the evidence seized as a result of the entry.

The Court concludes, on the facts and circumstances as set out, that the police officers had probable cause and reasonable grounds to believe that the defendant had committed a felony by engaging in illicit narcotics traffic. Draper v. United States, 1959, 358 U.S. 307, 79 S. Ct. 329, 3 L.Ed.2d 327; Smith v. United States, 1958, 103 U.S.App.D.C. 48, 254 F.2d 751.

The issue remaining is: Does a policeman without a warrant, but with probable cause to believe that a felony has been committed and that the felon is within his apartment, have a right to forcibly enter the apartment when he is refused admittance after announcing his authority and purpose and when he reasonably believes the fruits of a crime and contraband are in the apartment and are threatened with destruction? [1]

In Smith v. United States, supra, the facts were almost identical to those of this case—"almost" because the entry there was by turning the knob of the door and it is not clear whether the majority considered this a "breaking", although the dissent certainly did. The court in Smith upheld the search.

In Accarino v. United States, 1949, 85 U.S.App.D.C. 394, 179 F.2d 456, Judge Prettyman, for the court, wrote:

"Unless the necessities of the moment require that the officer break down a door, he cannot do so without a warrant; and if in reasonable contemplation there is opportunity to get a warrant, or the arrest could as well be made by some other method, the outer door to a dwelling cannot be broken to make an arrest without a warrant. The right to break open a door to make an arrest requires something more than the mere right to arrest." 85 U.S.App. D.C. at page 402, 179 F.2d at page 464.

In McKnight v. United States, 1950, 87 U.S.App.D.C. 151, 183 F.2d 977, 978, the case upon which the defendant principally relies, the court held that where the police reject a "convenient present opportunity" to make a lawful arrest and instead deliberately wait until the person enters his house, so that they then can break in, make the arrest, and search the house "incidental to" the arrest, there is a violation of the Fourth Amendment. The court held that the breaking could not be justified on the ground of necessitous circumstances—the argument for necessitous circumstances running: the police are refused admittance after knocking on the door; they then

1. The formulation of the issue in Morrison v. United States, 1958, 104 U.S.App. D.C. 352, 356, 262 F.2d 449, 453 was: "Does a policeman without a warrant, but with probable cause to believe that a felony has been committed and that the felon is within his dwelling house, have a right to enter the dwelling when there is no response to repeated knocking on the door and when there is no urgency for an arrest?"
The court answered the question in the negative carefully pointing out that the officers were not refused admittance (as no one was in the house) and no instrumentalities or fruits of a crime were involved.

are fearful that admittance is refused because incriminating contraband is about to be destroyed, ergo: circumstances necessitating immediate entry—because the police themselves created the emergency by rejecting the convenient and earlier opportunity to make the arrest.

In this case, as in the similar case of Smith v. United States, circumstances necessitating immediate entry existed—the police feared the destruction of the fruits of a crime and contraband. And here, as in Smith, and unlike McKnight, the police did not create the circumstances themselves. While it is quite valid to say that the police had no reason to suppose the destruction of the marked money or narcotics before they made their presence known to the defendant by knocking on his door,[2] it is not simply the knocking on the door that is pointed to by McKnight to show that the police themselves "created the emergency"; it is also the rejection of the earlier opportunity to arrest McKnight. There was no such rejection[3] in this case or in Smith. That *both* factors are necessary must be so or the majority in Smith would at least have discussed McKnight;[4] as it was, Accarino and McKnight were not even cited.

McKnight holds that the police may not use an arrest—after passing up an earlier opportunity—as a subterfuge for the true purpose of searching a house without a warrant. In McKnight, this purpose of the police was shown by their rejection of the earlier arrest opportunity. Here the only testimony showing such a purpose was that the defendant was about to leave his apartment. Perhaps the police could have waited until he left his apartment. But their failure to do so is not McKnight, where the police deliberately watched the defendant walk past them so that they could arrest him in his house and then search it. Here the police arrested the defendant just as soon as they believed he had committed a felony. In McKnight there was a rejection of a convenient present opportunity. Here there was merely a rejection of a future possibility.

Finally, the Court notes that in both Accarino and McKnight the police failed to announce their purpose. This is required before a door can be broken, whether to execute an arrest or a search warrant. Miller v. United States, 1958, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332, 18 U.S.C. § 3109.

Under the facts and circumstances of this case, the Court concludes that the police were justified in kicking in the door as they reasonably believed the fruits of a crime and contraband were about to be destroyed. There existed those "necessitous circumstances" required by Accarino and these circumstances were not "created by" the police for the purpose of a search without a

2. See dissenting opinion of Bazelon, J. in Smith v. United States at pages 59–60 of 103 U.S.App.D.C., at pages 762–763 of 254 F.2d.

3. Perhaps in the instant case, probable cause existed solely on the basis of the two tips and phone call and therefore the police could have arrested the defendant earlier in the day on the street or at his job. (At oral argument on the motion, the Government took the position that probable cause did not exist until the "set-up" purchase was consummated.) But whether probable cause existed on that information alone is a close question and the Court does not read McKnight as requiring the police to act at their peril in these situations.

That is, if they arrest too quickly there is a possibility that a court will later say the arrest was without probable cause and that the subsequent search was therefore illegal; and if they delay in order to make out a strong case of probable cause, there is a possibility of having the search incidental to the arrest declared unlawful because of the rejection of earlier opportunities to make the arrest.

4. Particularly since one of the two judges constituting the majority in Smith—Judge Prettyman—was the author of Accarino, upon which McKnight relies. See Judge Prettyman's discussion of Smith and Accarino in Morrison v. United States, supra, note 1.

warrant as in McKnight. The entry and the arrest being proper, the search incident to the arrest was lawful. United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Smith v. United States, supra; cf. Morrison v. United States, supra. The motion to suppress is therefore denied.