**David E. BOSLEY, Appellant,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**No. 21513.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 30, 1969.

Decided April 9, 1970.

Petition for Rehearing Denied
May 8, 1970.

**1258**

Mr. R. Timothy Hanlon, with whom Mr. Murdaugh Stuart Madden, Washington, D. C., (both appointed by this court) was on the brief, for appellant.

Mr. Donald T. Bucklin, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., Roger E. Zuckerman and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee. Messrs. David G. Bress, U. S. Atty., at the time the record was filed, and John A. Terry, Asst. U. S. Atty., also entered appearances for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, and WRIGHT and MacKINNON, Circuit Judges.

MacKINNON, Circuit Judge:

Appellant was charged in a three count indictment with housebreaking (D.C. CODE § 22–1801), rape (D.C. CODE § 22–2801), and sodomy (D.C. CODE § 22–3502). He was found guilty by a jury of housebreaking and sodomy as charged and of the lesser included offense of assault with intent to commit rape. He was sentenced to four to twelve years for housebreaking, four to twelve years for assault with intent to commit rape, and three to nine years for sodomy, the sentences for the assault with intent to commit rape and sodomy to run concurrently but consecutively to the sentence for housebreaking.

The Government's evidence may be briefly summarized. The complaining witness, a young lady, testified that she resided by herself in an apartment on Connecticut Avenue, N.W. in Washington, D. C. She testified that on the night of March 16, 1966, she went to bed around 11:30 P.M., having locked both the door and window to her apartment. She testified that she was awakened later that night by a man standing over her bed. Her testimony that Bosley entered her apartment without her consent is corroborated by a broken window glass in her apartment opposite the fire escape. Both complainant and a girl friend testified this was not broken earlier in the evening. Thus the fact that the window was broken in a manner to permit unlatching the lock from the outside is corroborative of the Government's contention that Bosley had gained admission to the apartment in this manner. Also corroborative of an outside entrance by Bosley into the apartment is complainant's testimony that he was wearing gloves when she first noticed him standing by her bedside. Bosley admitted he had gloves with him at the time.

The complaining witness recognized the intruder as appellant, whom she had met on two previous occasions,[1] and who lived in the apartment above her. She screamed and was told by appellant that he would kill her if she continued to scream. She testified that appellant then raped her and forced her to engage

[1.] At the first meeting, the complaining witness had locked herself out of her apartment. She went upstairs to the apartment of another girl she knew and was surprised to find appellant staying there also. The appellant then assisted her in gaining entry by climbing from the upstairs apartment via the fire escape to her apartment, going in through the window, and opening the locked door. The second meeting was apparently a brief encounter in front of the building, more properly described as a rooming house than as an apartment building. It was an older home that had been subjected to some remodeling. Appellant testified that he was invited to the complainant's apartment during this encounter but this was denied by her.

in oral sodomy. She testified that a cycle of rape and sodomy continued throughout the night. Her description of the rape and sodomy can only be described as bestial. She further testified that appellant left her apartment by way of the fire escape the next morning, and she then promptly went to a girl friend's apartment and called the police.

A detective of the Metropolitan Police arrived at her girl friend's apartment in answer to her call, and together they proceeded to her apartment. Shortly thereafter, another detective arrived at complainant's apartment and the two officers then went upstairs to appellant's apartment. As testified to by the detective:

"We knocked on the door. The door was a little bit ajar. We knocked on the door. No answer. We could look through and see someone laying on the couch. So we just pushed the door open and walked in."

The officers then shook the appellant awake,[2] placed him under arrest, and took him to the police station. Here certain items of appellant's clothing were seized and a sample of his pubic hair was taken.[3] Apparently no evidence was taken from the appellant's apartment.

Appellant defended on the claim of consent. He testified that he had twice met the complaining witness in or about their apartment building,[4] that preceding the early morning hours of March 17th he had been to a bar and, upon returning to his apartment, had felt lonely. The girl in whose apartment he was staying was out of the city. He further testified that he went downstairs to the apartment of the complainant, knocked on the door, was admitted and that after some conversation, he made advances which were accepted by her, after which he fell asleep, that when he awoke the next morning, complainant was upset about the possibility of pregnancy and about her fiance learning of the episode; that he was feeling poorly and could offer her little sympathy, so he left her apartment by the window and returned to the upstairs apartment where he was staying by way of the fire escape. He stated he took this route because he had left the keys to his apartment in his apartment. When he found there was no food in his apartment, he went to a nearby store and picked up some groceries, then returned and fell asleep on the couch, and the next thing he remembered was being awakened by the police.

### I

The appellant first argues that the trial court erred in admitting, over objection, a certain statement allegedly made by him while in police custody and

---

2. An indication of how soundly appellant was sleeping can be gained from the testimony that the police awakened him at about 8:45 A.M. on March 18th and that he had a hangover at the time; that from 10 P.M. of the day previous he had been out celebrating his birthday and had consumed 13 cans of beer, a couple of mixed drinks and some sherry; engaged in three acts of sexual intercourse and several acts of sodomy and had been awake until about 7:45 A.M. when he went to sleep. He had about one hour's sleep according to this version. His own testimony reduced the instances of sexual intercourse to one and stated he had slept from about 3:00 A.M. to 6:00 A.M. The jury did not believe his testimony in other particulars and the other

version of his night's activity seems to be the most reliable.

3. The items taken from the appellant at the police station included a shirt, T-shirt, undershorts, handkerchief, sweater and trousers. This property was turned over to the FBI for analysis. This analysis revealed that the fibers taken from appellant's trousers and sweater were similar to those found on the complainant's sheets, nightgown, and panties. Pubic hairs which matched the sample taken from appellant were found on complainant's nightgown and sheets. Evidence of these and similar analyses were introduced into evidence by stipulation. Appellant here challenges the introduction of this evidence. See note 8 infra.

4. See note 1 supra.

before he had been advised of his rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The statement in question was allegedly made by appellant in his apartment after the police had entered and shaken him awake. The detective was allowed to testify that after they had awakened him they first informed him that the girl downstairs had charged him with rape and appellant stated that he had not been in the apartment of the complaining witness but rather had been in a tavern until 2:00 A.M. at which time he had come home and gone to bed. The appellant denied making this statement; rather he testified as follows:

"As far as I can recall, when they came in, he said the girl downstairs * * * complained I had broken into her apartment and raped her.

"The only thing I can recall telling him was I didn't know what he was talking about, that I did not break in and I had not raped anybody."

Appellant was next arrested and taken to the police station.

■ The Government first argues that the trial court properly admitted the detective's testimony as impeachment evidence; the defense argues that the statement was used to discredit appellant's consent defense. In any event, we need not dwell long on this point since Miranda, if violated, under our decisions would prohibit the introduction of the statement even if it were used only for impeachment purposes. Miranda v. Arizona, supra, 384 U.S. at 477, 86 S.Ct. 1602; see also Proctor v. United States, 131 U.S.App.D.C. 241, 404 F.2d 819 (1968); Blair and Suggs v. United States, 130 U.S.App.D.C. 322, 401 F.2d 387 (1968).

The Government next argues that appellant's statement was voluntary and as such comes within the "volunteered statement" exception to Miranda. On this point Miranda states:

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444, 86 S.Ct. at 1612.

We note that the Court drew no distinction between voluntary and involuntary statements, and we may assume that Miranda applies to all statements that come within its purview, whether volunteered or not.

However, the Court also made it clear that not all statements come within the purview of its rule. We quote (384 U.S. at 478, 86 S.Ct. at 1630):

"In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. *The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated.* There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (Emphasis added.)

The emphasized portion of the quote shows that the question to be asked is not solely whether the statement was voluntary, but rather in what circumstances was the voluntary statement made.[5] The rest of the quote sheds light on this question. It would indeed

---

5. In Orozco v. Texas, 394 U.S. 324, 326, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), the police "officers questioned petitioner about incriminating facts" in his own

be a harsh rule with respect to a volunteered statement made by one who walked into the police station in order to confess, or who volunteered his confession over the telephone, to prohibit its admission in evidence because the volunteered statement was offered before the police could give the required warning. In these situations, there would be no opportunity for overreaching or other abusive practices on the part of the police and consequently one of the main purposes of the *Miranda* decision—the deterrence of such police practices—would not be involved. Exclusion in such situations would serve no useful purpose and the Court wisely limited its rule to those statements "stemming from custodial interrogation." [6]

Turning to the case at bar, we note that appellant's statement whatever its exact content [7] was a spontaneous denial of guilt which he volunteered when the police informed him of the charges levelled against him. We consider the reasoning of *Miranda* is applicable here which allows the admission of a voluntary statement that is not the result of "in-custody interrogation." We note here that there was no opportunity for the police to employ any abusive practice in order to obtain an incriminating statement. At the time the statement was made, there had been no interrogation whatsoever, and thus appellant's statement could not have been one "stemming from custodial interrogation." And no claim is made that appellant was subjected to any custodial interrogation.

We are not ready to condemn the police practice of announcing to a person they may seek to arrest the charges against him as early as possible in the encounter. In this instance the police were only doing what was required of them by 18 U.S.C. § 3109. Upon learning the charges, the arrested person may quite naturally make a spontaneous statement of innocence or noninvolvement. At this point, the police may have had no opportunity to give the *Miranda* warnings or to prevent the statement from being made. They had no such opportunity here. Exclusion of a statement made in these circumstances would not effectuate the purposes of the *Miranda* decision.

We recognize that at some point in time during the course of the arrest it could no longer be contended that the police were without opportunity to give the *Miranda* warning. We believe that *Miranda* does require the police to warn an arrested suspect of his rights as immediately as practicable after arresting him. A heavy burden rests on the Government to prove any contention that the arrested suspect volunteered a statement without any "interrogation," explicit or implicit, on the part of the police and before he could be warned of his rights. *See* Miranda v. Arizona, *supra*, 384 U.S. at 475, 86 S.Ct. 1602. We also recognize that the case before us would be quite different had the police interrogated the appellant in conjunction with informing him of the charges against him, *i. e.*, had the police informed the appellant of the charges and then *asked* him to respond to these charges. But the case at bar is not such a case. Here the appellant's statement was a spontaneous denial of guilt which he volunteered in response to the announcement of the charges levelled against him before the police had an opportunity to give the usual warning. We do not think the *Miranda* decision was intended to apply to such facts. Its entire thrust, as it reiterates so many times, is at "in-custody interrogation."

II

The appellant next argues that the statement allegedly made by him, along

---

room without advising him of his rights. The facts there are thus distinguishable from this case because here the police never questioned Bosley about the crime either at his own room or at the police station and no evidence was offered or admitted as to any response Bosley gave to any question by the police.

6. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602 (1966).

7. *See* p. 4, *supra*.

with certain physical evidence,[8] should not have been admitted on the grounds that they were obtained following his arrest which was in violation of 18 U.S.C. § 3109 (1964). That statute provides:

> "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

It is clear that appellant's point does not raise constitutional issues because it is unquestioned that the police did have probable cause to enter to arrest Bosley for felonies. What is raised is the application of the statute to the entry and its effect on certain evidentiary matters. In Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), the Supreme Court held section 3109 to be applicable to arrests,[9] and the Court has since broadly construed the section to proscribe an "unannounced intrusion," Sabbath v. United States, 391 U.S. 585, 590, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968).

On the other hand, the Supreme Court has left open the question of whether there may be exceptions to the requirements of section 3109 in certain circumstances. See Sabbath v. United States, supra, 391 U.S. at 591, 88 S.Ct. 1755; Ker v. California, 374 U.S. 23, 40, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Wong Sun v. United States, 371 U.S. 471, 482–83, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Miller v. United States, supra, 357 U.S. at 309–310, 78 S.Ct. 1190. Mr. Justice Brennan was clearly of the opinion there would be certain exceptions to any constitutional ruling on the subject, Ker v. California, supra, 374 U.S. at 47, 83 S.Ct. 1623, and Mr. Justice Marshall has suggested that these exceptions may be applicable to section 3109. Sabbath v. United States, supra, 391 U.S. at 591 n. 8, 88 S.Ct. 1755. Lower courts have, in fact, engrafted certain exceptions onto section 3109.[10] One of these may be termed the "useless gesture" exception. Cf. Miller v. United States, supra, 357 U.S. at 310, 78 S.Ct. 1190; Hair v. United States, 110 U.S.App.D.C. 153, 155, n. 9, 289 F.2d 894, 896 n. 9 (1961). In the past it has been applied when the arresting officers were justified in being virtually certain that the person to be arrested knew their purpose, and hence compliance with section 3109 would a "useless gesture." See, e. g., Wittner v. United States, 406 F.2d 1165, 1166 (5th Cir. 1969); Der Garabedian v. United States, 372 F.2d 697, 699 (5th Cir. 1966); Chappell v. United States, 119 U.S.App.D.C. 356, 358–359, 342 F.2d 935, 937–938 (1965).

■ We think application of the "useless gesture" exception to the case at bar is appropriate. We note that the officers oiginally attempted to comply with section 3109 by knocking on the partially open door. They received no

---

8. See note 3, supra. We note that this physical evidence was not seized at the appellant's apartment, but rather was taken from him at the police station after his arrest. Appellant argues that this evidence should have been suppressed as "fruits of the poisonous tree" under Wong Sun v. United States, 371 U.S. 471, 487–488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). However, granting arguendo the primary illegality, we are far from clear that the seizure of this evidence was not so remote so as to be "purged of the primary trait." Id. In any event, our disposition on the merits of the § 3109 question renders decision of this question unnecessary.

9. This circuit had reached a similar result prior to Miller in Accarino v. United States, 85 U.S.App.D.C. 394, 179 F.2d 456 (1949).

10. See, e. g., Gilbert v. United States, 366 F.2d 923, 932 (9th Cir. 1966) (peril to officers); Wayne v. United States, 115 U.S.App.D.C. 234, 241–243, 318 F.2d 205, 212–214 (1963) (emergency situations; here a report of a "dead, dying, or unconscious woman"); United States v. Fair, 176 F.Supp. 571, 573–574. (D.D.C.1959) (destruction of evidence).

response and apparently knocked again. Then, noting that appellant was asleep on the couch they entered the apartment through the open door, awakened appellant and announced their purpose. Since appellant had not been awakened by their knocking, the officers could reasonably have concluded that further knocking or verbal announcement would be a "useless gesture." Indeed, it appears that at this point the most practical means available to the officers to carry out their duty of giving notice of their authority and purpose was to enter the apartment and awaken the appellant. We note that the officers, after they had awakened the appellant, did immediately state their purpose (and impliedly their authority) by informing the appellant of the charges levelled against him.[11] To have done so before entry would have been a useless gesture as the person the statute is designed to protect, the occupant, was asleep and the indications to the officers were that he was not capable of hearing them as he had not been awakened by their knocking. We conclude that the entry through the open door in these circumstances did not violate section 3109.

Affirmed.