**UNITED STATES of America**

v.

**Johnnie CURTIS, Appellant.**

**No. 22470.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 10, 1969.

Reargued En Banc Nov. 24, 1969.

Decided May 19, 1970.

---

non, Washington, D. C., (both appointed by this court) was on the brief, for appellant.

Mr. John G. Gill, Jr., Asst. U. S. Atty., for appellee. Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee. Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., also entered appearances for appellee.

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON and ROBB, Circuit Judges, sitting en banc.

## ON REHEARING EN BANC

LEVENTHAL, Circuit Judge:

This is an appeal from a conviction for robbery (22 D.C.Code § 2901) and assault with a dangerous weapon (22 D.C. Code § 502).

This case was set down for reargument en banc because it, like No. 21,736 Dorman v. United States, involves the issue of the need for a warrant to enter a the need for a warrant to enter a private dwelling to make an arrest. In this case, as in *Dorman*, we first remanded to the District Court for a hearing to further elaborate the circumstances surrounding the arrest and the failure to obtain a warrant.

The record before us en banc, as amplified on remand, reveals the following: The complaining witness, Shelton Woods, testified that on October 21, 1967, at approximately 11:00 a. m., he was robbed at gunpoint by a casual acquaintance whom he knew at the time only by the nickname of Bo Winkie. Taken were his watch, coat and a five dollar bill. Immediately after the robbery Woods hailed a police cruiser. Woods and Detective Moore drove around the area for 15 or 20 minutes in an unsuccessful effort to find Bo Winkie. Woods went home and made inquiries, but it was not until 7:15 p. m. that he

Mr. Richard F. Generelly, Washington, D. C., with whom Mr. Charles V. Shan-

learned that his cousin knew the location, but not the address, of a house where Bo Winkie Curtis could be found, though she did not know how long he would remain there. Woods thereupon phoned the police.

Detective Moore testified that after speaking to Woods on the telephone he proceeded to pick up Woods and his cousin. Following the directions of the cousin as to the location where Bo Winkie was at present, the police arrived at a house at 3014 13th Street, Northwest, Washington, D. C. An officer was detailed to the back door. Detective Moore, his detective partner, and a uniformed officer, together with Mr. Woods went up to the second floor apartment. Moore testified, and the trial judge found, that "the officers knocked on the door and the door was opened. There were three or possibly four men standing there. At that time the complaining witness Woods identified Curtis stating, 'That's the man that robbed me,' and Curtis ran." Curtis ran to the backporch and stopped and turned. He was then arrested by Detective Moore. When Curtis was brought back inside, Woods identified a watch being worn by Curtis as the stolen watch.

■ In these circumstances we uphold the conclusion of the trial judge that the police action before us was not unreasonable.[1] We are not required to determine whether the statements of Woods were probable cause for a warrant authorizing the arrest of "Bo Winkie."[2] It was not unreasonable for the police to continue their investigation beyond the bare assertion of complainant that Bo Winkie had robbed him, and that his cousin knew the location but not the address where Bo Winkie could be found. By the time the police had come to learn how Bo Winkie could be found a new dimension had been added, for the cousin whose presence was needed to arrive at the location (the address being unknown) also advised that she did not know how long Bo Winkie would be there. This made it reasonable for the police to set forth at once without waiting for a warrant, and to come prepared for exigencies.

1. Our approach is generally in accord with his, though not identical. The key findings of the trial judge were set forth in paragraphs 2 and 4 of his findings entered after remand, as follows:

2. In view of the circumstances described above, failure to make application for a warrant was reasonable. Until the defendant could be connected with the crime and his identity determined with certainty, all that could have been issued was a "John Doe" warrant. The officers acted in a reasonable manner in waiting until they had some information which definitely identified Curtis as the person who had robbed the complainant. Furthermore, Detective Moore testified that he had no address and did not know how long Curtis would remain at the place pointed out by the cousin.

4. The complaining witness Woods reported to the police that he had been robbed of his watch and money at gun point. Woods stated that he knew the defendant by the nickname of Bo Winkie, but did not know his real name. After contacting his cousin and learning the name and whereabouts of Bo Winkie (Johnnie Curtis), Woods accompanied the police officers to 3014 –13th Street, N.W. Upon seeing Johnnie Curtis, Woods immediately states, "That's the man that robbed me" Curtis then ran. There was probable cause to arrest the defendant without a warrant.

2. While there is room for nickname and alias warrants under the Federal Rules of Criminal Procedure, there are also decisions, whose merits we need not pursue, indicating that their execution adds an extra dimension of risk in making an arrest. See West v. Cabell, 153 U.S. 78, 14 S.Ct. 752, 38 L.Ed. 643 (1894); United States v. Swanner, 237 F.Supp. 68 (E.D.Tenn.1964). Rule 4 provides that an arrest warrant "shall contain the name of the defendant or, if his name is unknown, any name or description by which he can be identified with reasonable certainty." The above cited cases would make the validity of the arrest depend not only on the probability that the person arrested had committed the crime, but also on the accuracy of the witness as to whether the person arrested had in fact used the name set forth in the warrant.

■ We are not required to determine whether these facts alone would have sufficed to authorize an entry for the purpose of making a warrantless arrest. In this case prior to making an entry the police had important additional facts. First, Woods identified a specific person as the robber. Second, that man started to run. That attempted flight was pertinent both on the issue of probable cause for arrest,[3] and on the urgent need of taking action forthwith, without waiting for a warrant, in making an unconsented entry for the purpose of arrest.

These additional facts, which were not before us when this case was set for argument en banc,[4] establish this as a clear case for affirmance.

■ Defendant claims that the arrest was in violation of 18 U.S.C. § 3109. Section 3109, which provides that an officer may break any inner or out door or window to execute a search warrant if "after notice of his authority and purpose" he is refused admittance, also establishes the standard governing entry for the purpose of making an arrest. Miller v. United States, 357 U.S. 301, 306, 78 S.Ct. 1190, 2 L.Ed.2d 1332

(1958). Section 3109 is a codification of the common law tradition against unannounced intrusions into the home. Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968). We think the criteria of § 3109 were satisfied in this case where the detective first knocked on the door, the door was opened voluntarily, and the detective (and uniformed police) announced "Police" and asked whether Johnnie Curtis was there. (Tr. 65, 72) No further announcement or action was necessary as a predicate for the entry, for the purpose of arrest, after the identification of Curtis and his attempted flight. We find no unlawful intrusion on privacy.

■ There is no merit to appellant's contention that the evidence was insufficient to support conviction for assault with a dangerous weapon. Woods testified that he was robbed at gunpoint. That the weapon was not recovered and put in evidence at trial does not raise a reasonable doubt as a matter of law. See Soper v. United States, 220 F.2d 158, 15 Alaska 475 (9th Cir. 1955).

Affirmed.

3. In Peters v. New York, 392 U.S. 40, 88 S.Ct. 1912, 20 L.Ed.2d 917 (1968) the Court said, "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea*, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest." 392 U.S. at 66–67, 88 S.Ct. at 1904 (citations omitted). Of a showing of probable cause that consisted of strange noises, furtive movements and flight, the Court said, "It is difficult to conceive of stronger grounds for an arrest." 392 U.S. at 66, 88 S.Ct. at 1904. In the case before us the flight after Woods' identification of appellant as the robber is in a context that permits its use as part of the pattern establishing probable cause.

The context is entirely different from that envisaged in Wong Sun v. United States, 371 U.S. 471, 483 n. 10, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) where the Court said that where there is only vague suspicion and the flight "must be regarded as ambiguous" because of the possibility that it was in response to an illegal entry, the flight does not constitute probable cause to justify an arrest and search of the premises.

4. We are aware that some of the trial testimony would support the inference that it was not until after the police had entered the dwelling that Curtis fled to the back porch. At trial, however, no effort was focused on placing events in their proper sequence.