UNITED STATES of America

v.

Robert S. WYLIE, Appellant.

No. 23072.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 12, 1970.

Decided March 29, 1972.

Mr. Robert N. Hickey, Washington, D. C., with whom Mr. Dennis I. Meyer, Washington, D. C. (both appointed by this Court), was on the brief, for appellant.

Mr. Julius A. Johnson, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before TAMM, ROBINSON and Mac-KINNON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This appeal, from a conviction of robbery,[1] challenges the validity of appellant's in-home arrest and the incidental seizure of evidence subsequently introduced at his trial. The evidence in question was money allegedly taken during the robbery and a shirt allegedly worn by the party who perpetrated it. Illegality of the seizure is urged on grounds that the arrest was unlawful for noncompliance with 18 U.S.C. § 3109,[2] and that the seizure followed a search too broad in scope to satisfy constitutional demands. Concluding that neither the arrest nor

---

1. D.C.Code § 22–2901 (Supp. IV 1971).

2. Quoted in note 36, *infra.*

the search exceeded permissible bounds, either statutory or constitutional, we affirm the conviction.

## I

About 4:45 on a May afternoon, Ethel D. Summers [3] was attacked by a young man and robbed of her purse in the lobby of 1820 Clydesdale Place, Northwest, her apartment building.[4] The man, whom Miss Summers had ample opportunity to scrutinize,[5] wore a brown shirt, and the purse contained an envelope enclosing $85 in currency, including a one dollar bill bearing a distinctive red mark.[6] After the misdeed, the robber made off and Miss Summers, in her words, "went behind him to see where he was going." Observing that he fled into 1860 Clydesdale Place, the adjacent apartment building, Miss Summers asked a friend to watch the front door to that building and hurried into her own building for help. Joe Taylor, Jr., informed of the incident, rushed to 1860 Clydesdale in search of the thief while another friend called the police.

Taylor reached the open rear exit from the basement of 1860 Clydesdale in time to see a man clad in a brown shirt scramble over the back fence and race through the abutting alley. Two police officers, Edward Dowling and Clark T. Smith, arrived on the scene, and were informed of what had transpired. All four then went to Ontario Place, the next street over, to look for the brown-shirted robber. After a brief stop at the home of the neighborhood newsboy,[7] they came upon a witness on the sidewalk, Charlotte Filmore, who told them that "the man that I just seen running" who had "almost knocked me down" "ran in this house."[8] The house to which Mrs. Filmore directed them was 1884 Ontario Place, appellant's residence, located about a block from the point at which the robbery occurred.[9]

To 1884 Ontario the foursome proceeded. Officer Dowling sought admittance at the front door while Officer Smith proceeded to the back door on a similar mission. The officer's shouts over a five-minute period failed to elicit a response at either door.[10] Finally, Officer Smith entered the house through the closed but unlocked back door, opened the front door, and a floor-by-floor check of the interior was made.[11] Appellant was eventually detected in the attic, nude from the waist up and lying prone in a three-foot crawl space beneath the eaves

3. Miss Summers became Mrs. Lyons by marriage prior to appellant's trial.

4. Miss Summers was returning to her apartment with a bag of groceries. She first saw her assailant-to-be as she approached the door to the building; he passed her and they both spoke. Miss Summers next noticed him "peeping" at her as she opened her mailbox in the lobby. Apprehensive of trouble, she dropped her mail in her grocery bag and unsuccessfully endeavored to exit from the lobby. The man grabbed her in the back of her coat, ripping it to the waist, and then snatched her pocketbook and ran from the building.

5. See note 4, supra.

6. The $85 was money turned over to Miss Summers to enable her to make a purchase for her church. She was certain of the amount because she had counted it and had placed it in an envelope in her purse. At the time, she had noticed the marked bill, which she described to the police as a "one dollar bill that had a red mark on it like somebody had taken a pencil and drawn a red line on it."

7. That call was induced by Taylor's suggestion that the newsboy might be the robber. A brief colloquy there satisfied the officers that the newsboy was not the culprit.

8. Not all of Mrs. Filmore's statement to the officers appears in the record. See note 29, infra.

9. Mrs. Filmore was herself a resident of the 1800 block of Ontario Place. Taylor, and apparently Miss Summers also, had known her previously.

10. The officers' efforts are detailed in text infra following note 31.

11. Miss Summers did not accompany the officers and Taylor through the house. As she started in, one of the officers told her "to go back" because "we may have to use firearms," and she remained outside on the street.

of the roof, and was arrested immediately. In the crawl space beside appellant was a short-sleeved brown shirt. On top of a chest a short distance across the attic was a red cloth wrapped around a wallet containing $85, including a red-marked dollar bill.[12] Miss Summers unhesitatingly identified appellant as her assailant, the shirt as the one worn by him, and the red-marked bill as part of the $85 in her purse. By Officer Dowling's estimate, the elapsed time from offense to apprehension was about 15 minutes.

At trial, the Government fully established each of the foregoing events, and introduced the shirt and the money as part of its proof. Appellant presented no evidence whatsoever. The jury found him guilty of robbery as charged, and the judge committed him under the Federal Youth Corrections Act.[13]

## II

As previously indicated, appellant advances two grounds for reversal of his conviction. The first is that the requirement of Section 3109 [14] that police officers announce their purpose as well as their authority before breaking into a habitation was never met.[15] The second, predicated upon Chimel v. California,[16] is that in any event the search uncov-

ering the shirt and the money was too broad to withstand the Fourth Amendment's requirement of reasonableness. The record convinces us, however, that if, although only if, the entry into appellant's house and the ensuing arrest were lawful, so also was the seizure of those items.

To be sure, as appellant argues, he was arrested and handcuffed when he emerged from the crawl space, and probably could not thereafter have negotiated even the short distance across the attic room to the chest atop which the red cloth enfolding the $85 was. But whatever implications Chimel might have if it were applicable,[17] it cannot affect the present situation. The arrest and seizure [18] antedated the Chimel decision and Chimel does not operate retroactively.[19] Since pre-Chimel doctrine governing the scope of a search incident to a lawful arrest amply sustains the limited one here,[20] we cannot accept appellant's second ground as an independent basis for condemning the reception of the money in evidence.

We are, of course, left with appellant's Section 3109 grievance, and in that connection some preliminaries are necessary. His thesis is that there was no pre-entry announcement by the officers of their purpose in seeking admission into the

---

12. At the head of the attic stairway was a small room at one end of which was the crawl space. On the other side of the room was the chest on top of which the red cloth containing the wallet and money was found.

13. 18 U.S.C. § 5010(b) (1964).

14. Quoted in note 36, infra.

15. This contention is discussed in Part III, infra.

16. 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

17. We intend no intimation that Chimel would invalidate the seizure if it applied. We simply do not pass on the point.

18. If the officers were lawfully in the attic, the circumstances surrounding discovery of the shirt would summon an application of the plain view doctrine. See, e. g., Harris v. United States, 390 U.S. 234,

236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) ; Ker v. California, 374 U.S. 23, 42–43, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) ; United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927).

19. Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971) ; Hill v. California, 401 U.S. 797, 802, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971) ; United States v. Harris, 140 U.S.App.D.C. 270, 284, 435 F.2d 74, 88 (1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971).

20. United States v. Rabinowitz, 339 U.S. 56, 61, 70 S.Ct. 430, 94 L.Ed. 653 (1950) ; Harris v. United States, 331 U.S. 145, 151–52, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) ; Marron v. United States, 275 U.S. 192, 199, 48 S.Ct. 74, 72 L.Ed. 231 (1927) ; Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925).

house, and that in consequence the entry and subsequent arrest and discovery of the shirt and money were illegal. Appellant did not, however, take the course open to him under Criminal Rule 41(e) to move prior to trial for suppression of the use of those items as evidence.[21] Instead, he first objected at trial to their introduction by the Government, and then only as the trial neared its close.[22] The Government argues initially that appellant's objection was untimely, and that it should not be considered now.

■ Rule 41(e) specifies that motions to suppress the use of evidence "shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion. . . ."[23] While nothing in the record indicates that opportunity to move for suppression was less than abundant if in fact appellant knew that the officers' pre-entry announcement was

deficient, it is not entirely certain that he could have learned of the alleged shortcomings in the announcement until after hearing trial testimony on the transpirations preceding entry.[24] It was apparently for that reason that the trial judge felt compelled to rule on the merits of the objection rather than reject it as out-of-time. Moreover, the omission of a pretrial suppression motion—which, to say the least, is not to be recommended [25] —is not necessarily fatal, for the Rule provides that "the court in its discretion may entertain the motion at the trial or hearing." [26] And although a trial judge may disregard as untimely a suppression motion first presented at trial,[27] we will review his ruling on the motion if he exercises his discretion in the direction of entertaining it.[28] It follows, then, that the propriety of the introduction of the shirt and money into evidence is properly before us on this appeal.

21. "A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for the use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing." Fed. R.Crim.P. 41(e).

22. The objection came during the course of Officer Dowling's testimony, and after Miss Summers and Taylor had completed their testimony and presumably had been excused. Indeed, Taylor had already

testified, without objection, to appellant's arrest in the attic and the discovery of the brown shirt in his hiding place.

23. See note 21, *supra*.

24. While, as later appears, see text *infra* at notes 32–34, it is highly improbable that appellant was unaware of the presence of the officers—as police officers— and their desire to be admitted to the house, there is a possibility, albeit a very small one, that he did not hear a statement by them as to why they sought to gain admission if such a statement was made. See note 83, *infra*.

25. See text *infra* at note 27.

26. See note 21, *supra*.

27. *E. g.*, Bailey v. United States, 131 U.S.App.D.C. 314, 315, 404 F.2d 1291, 1292 (1968).

28. Wrightson v. United States, 95 U.S.App. D.C. 390, 395, 222 F.2d 556, 561 (1955). See also Sabbath v. United States, 391 U.S. 585, 588 n. 1, 88 S.Ct. 1755, 20 L.Ed. 2d 828 (1968) ; Small v. United States, 396 F.2d 764, 765 (5th Cir. 1968) ; Stein v. United States, 166 F.2d 851, 855 (9th Cir.), cert. denied, 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768 (1948) ; Sumrall v. United States, 382 F.2d 651, 653, (10th Cir. 1967), cert. denied, 389 U.S. 1055, 88 S.Ct. 806, 19 L.Ed.2d 853 (1968).

■ We may, however, properly separate out and lay aside two superficially related issues which this appeal in no wise involves. There is no contention that the police officers did not have probable cause to arrest appellant for the robbery of Miss Summers. Nor is there any contention that in the circumstances the officers were obliged to seek an arrest warrant before undertaking to come into appellant's house. Neither of these points was raised in the trial court, with the result that the record is less than full in these respects. But even the as-is record portrays a chain of events pointing the finger of guilt strongly toward appellant.[29] It also reveals a serious crime of violence committed, the perpetrator at large bearing evidence of the crime—which expectably would soon be concealed—and the distinct probability that further flight would be attempted if his apprehension was appreciably delayed.[30] It is much too late, then, to indulge any assumption that the officers did not have ample cause to believe that the occupant of the house was the culprit and that his prompt arrest was imperative.[31]

Even the one point litigated—that the officers did not comply with Section 3109 before entering appellant's house—needs considerable sharpening. The record, though underdeveloped on the issue because of the way it arose and was disposed of in the trial court, describes eloquently the magnitude of the officers' efforts to summon the occupant to the door. For some time prior to the entry —five minutes, the testimony establishes

29. See, e. g., the cases cited *infra* note 30.

The information Mrs. Filmore gave the officers looms large both with respect to probable cause to believe that appellant was the robber and to the officers' ostensible belief that he was in his house when they arrived there. See Part III, *infra*. The record does not set forth the entire conversation between Mrs. Filmore and the officers, and the reasons why it does not are evident. No occasion for introducing the colloquy to bolster probable cause was presented because no probable cause issue was ever raised. Inquiries at trial touching on Mrs. Filmore's role were, for the most part, carefully designed to avoid the content of her communications in an obvious effort to avoid the hearsay rule. And that is not all.

After appellant had made his Section 3109 objection, Government counsel announced at the bench his intention to summon Mrs. Filmore as a witness. There then was a discussion, which at the suggestion of defense counsel was not stenographically recorded, a practice we do not commend. See 28 U.S.C. § 753(b) (1) (1970); United States v. Long, 419 F.2d 91, 94 (5th Cir. 1969); Edwards v. United States, 374 F.2d 24, 26 (10th Cir. 1966), cert. denied, 389 U.S. 850, 88 S.Ct. 48, 19 L.Ed.2d 120 (1967). And see United States v. Workcuff, 137 U.S.App.D.C. 263, 422 F.2d 700 (1970). We do not know exactly what was said off the record, but the record does show that right after recordation was resumed Government counsel stated that "since you have just stated we don't need the witness, at this time the Government would rest," which the Government promptly did. It is clear, then, that the defense had a substantial—perhaps the decisive—hand in the nonproduction of Mrs. Filmore as a witness, and is not entitled to capitalize on it. See Orenstein v. United States, 191 F.2d 184, 193 (1st Cir. 1951); Glassman Const. Co. v. United States for Use and Benefit of Clark-Fontana Paint Co., 421 F.2d 212, 215 (4th Cir. 1970); Capella v. Zurich Gen. Acc. Liab. Ins. Co., 194 F.2d 558, 560 (5th Cir. 1952); Devine v. Zimmerman, 133 F.2d 850, 852 (8th Cir. 1943).

30. See Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 298–299, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Dorman v. United States, 140 U.S.App.D.C. 313, 319–22, 435 F.2d 385, 391–394 (en banc 1970); United States v. Harris, *supra* note 19, 140 U.S.App.D.C. at 273–279, 435 F.2d at 77–83; Washington v. United States, 134 U.S.App.D.C. 223, 226, 414 F.2d 1119, 1122 (1969); Chappell v. United States, 119 U.S.App.D.C. 356, 357–358, 359–360, 342 F.2d 935, 936–937, 938–939 (1965); Washington v. United States, 105 U.S.App.D.C. 58, 60, 263 F.2d 742, 744, cert. denied, 359 U.S. 1002, 79 S.Ct. 1142, 3 L.Ed.2d 1032 (1959); Smith v. United States, 103 U.S. App.D.C. 48, 51–55, 254 F.2d 751, 754–758, cert. denied, 357 U.S. 937, 78 S.Ct. 1388, 2 L.Ed.2d 1552 (1958).

31. See, e. g., Washington v. United States, *supra* note 30, 134 U.S.App.D.C. at 226, 414 F.2d at 1122.

—Officer Dowling stood "beating, knocking on the [front] door loudly and shouting 'Police officer, open up; police officer, open up,' " while Officer Smith was similarly "hollering at the back door. . . . " By Miss Summers' description, the officers "knocked and knocked and tried to get in for about five minutes and nobody answered . . . ; " by Taylor's, the officers "screamed out as loud as they possibly could and no one answered." [32] By no means, then, was this a case of a "no-knock" entry [33] or one effected on but an insubstantial attempt to avoid a breaking.[34]

Because appellant's objection to introduction of the evidence seized did not lead to a hearing on the Section 3109 issue, it is quite conceivable, as the Government states, that the record does not reflect all relevant details, including a possible announcement of the officers' purpose as well as authority.[35] Put another way, it cannot be said that the officers did not actually proclaim their purpose in seeking entry, but only that

the record does not affirmatively demonstrate that they did. The trial judge made his ruling on the trial testimony, which was directed to trial issues and not the legality of the entry, in the apparent feeling that a separate investigation into the latter was unnecessary. For our part, while a remand for full development of the facts surrounding entry might well show that purpose as well as authority was declared, we think the as-is record supplies enough to demonstrate that under the circumstances even a failure to announce purpose did not vitiate appellant's arrest or the concomitant evidentiary discoveries.

### III

Section 3109 imposes a general ban upon a federal officer's breaking into a habitation "to execute a search warrant" unless "after notice of his authority and purpose, he is refused admittance. . . . " [36] That command is central to the problem we now consider. For while, absent constitutional barriers,[37] the legal-

---

**32.** These efforts continued even after the house was entered. As Officer Dowling walked in, he "announced myself, 'Police officer, anybody here?' " in "[a] slow loud voice;" he "was shouting," the record informs, and Officer Smith "was also shouting." While exploring the first floor and then the second, Officer Dowling continued to announce himself "loudly" "as a police officer," "asking if anyone was home. . . ." Arriving at the attic stairway, the officers "were calling to see still if anyone was home," and "announced ourselves as police officers when we got upstairs in the attic," where just a bit later appellant was discovered in hiding.

**33.** E. g., Sabbath v. United States, *supra* note 28.

**34.** E. g., Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).

**35.** No one made specific inquiry of any witness as to whether the officers at any time stated their purpose in seeking admittance into appellant's house.

**36.** "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after

notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." 18 U.S.C. § 3109 (1964).

**37.** The Fourth Amendment incorporates, as a part of the reasonableness demanded of a search, some requirement of pre-entry notice of authority and purpose although its precise contours are as yet undefined. See Ker v. California, *supra* note 18, 374 U.S. at 38–40, 83 S.Ct. at 1632–1633 (opinion of Justice Clark), 374 U.S. at 46–53, 83 S.Ct. 1636–1639 (opinion of Justice Brennan) (1963). Like the statute, the constitutional rule is subject to exceptions, Sabbath v. United States, *supra* note 28, 391 U.S. at 591, n. 8, 88 S. Ct. 1755; Ker v. California, *supra* note 18, 374 U.S. at 38–40, 83 S.Ct. 1623 (opinion of Justice Clark), including the exception we later discuss. Ker v. California, *supra* note 18, 374 U.S. at 47, 83 S.Ct. 1623 (opinion of Justice Brennan). The position our appellant asserts is based wholly on the statute, and the exception dispositive of this appeal answers any constitutional argument as well as the statutory argument actually presented. For this reason, we deem it unnecessary to consider appellant's contention in a constitutional context separately.

ity of appellant's in-home arrest is to be tested by District of Columbia law,[38] the criteria specified in Section 3109—which has nationwide operation—are "substantially identical" to judicially formulated District requirements.[39] Those criteria govern entries not only for warranted searches but also those contemplating warrantless arrests,[40] and they come into play even though the circumstances may be sufficiently exigent to dispense with need for a warrant.[41] Appellant's attribution of unlawfulness to his arrest from the assertedly unlawful entry into his house is thus to be measured by Section 3109 as an embodiment of the District law applicable at the time.[42]

Indubitably, Officer Smith's entry through the closed but unlocked back door was an intrusion to which Section 3109 would ordinarily apply.[43] The more so was his unlocking and opening of the front door to admit the others.[44] Although the record nowhere indicates just how much of the house appellant was privileged to occupy,[45] we may assume that his entitlement extended to the attic wherein he was found.[46] And while the officers' shouts identifying themselves as police officers was a sufficient announcement of their authority,[47] notice of their purpose in seeking entry, unless excused, was in equal measure a statutory prerequisite.[48]

38. Miller v. United States, *supra* note 34, 357 U.S. at 306, 78 S.Ct. 1190. See also Ker v. California, *supra* note 18, 374 U.S. at 37–41, 83 S.Ct. 1623 (opinion of Justice Clark).

39. Miller v. United States, *supra* note 34, 357 U.S. at 306, 78 S.Ct. 1190, referring to Accarino v. United States, 85 U.S.App.D.C. 394, 397–403, 179 F.2d 456, 459–465 (1949).

40. Sabbath v. United States, *supra* note 28, 391 U.S. at 588, 88 S.Ct. 1755; Wong Sun v. United States, 371 U.S. 471, 482, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Miller v. United States, *supra* note 34, 357 U.S. at 309, 78 S.Ct. 1190; Bosley v. United States, 138 U.S.App.D.C. 263, 268, 426 F.2d 1257, 1262 (1970).

41. See, *e. g.*, Miller v. United States, *supra* note 34, 357 U.S. at 309, 78 S.Ct. 1190; United States v. Harris, *supra* note 19, 140 U.S.App.D.C. at 277, 435 F.2d at 81; Chappell v. United States, *supra* note 30, 119 U.S.App.D.C. at 358–360, 342 F.2d at 937–939.

42. Since the trial of this case, the District of Columbia Court Reform and Criminal Procedure Act of 1970, 84 Stat. 473 (1970), has specified comprehensive rules on the subject, now codified in D.C.Code § 23–591 (Supp. IV 1971). We have, of course, no occasion to consider that legislation on this appeal. For its legislative history, see S.Rep. No. 91–538, 91st Cong., 1st Sess. 12–15 (1969); H.R.Rep. No. 91–907, 91st Cong., 2d Sess. 104–09 (1970); H.R.Rep.No. 91–1303, 91st Cong., 2d Sess. 236–37 (1970). See also Comment, The New "No-Knock" Provision and Its Effect on the Authority of the Police to Break and Enter, 20 Am.U.L.Rev. 467 (1970–71); Note, Unannounced Entry to Search: The Law and the "No-Knock" Bill (S.3246), 1970 Wash.U.L.Q. 205 (1970).

43. Sabbath v. United States, *supra* note 28; Keiningham v. United States, 109 U.S.App.D.C. 272, 276, 287 F.2d 126, 130 (1960).

44. See cases cited *supra* note 43.

45. The record contains nothing but appellant's uncontested post-arrest statement to the officers that he lived in the house the officers entered.

46. Unannounced entries into areas unprotected by the Fourth Amendment do not violate Section 3109. See United States v. Mullin, 329 F.2d 295, 298–299 (4th Cir. 1964); Fields v. United States, 355 F.2d 543 (5th Cir.), cert. dismissed, 384 U.S. 935, 86 S.Ct. 1452, 16 L.Ed.2d 536 (1966); Brooks v. United States, 263 A.2d 45, 46–47 (D.C.App.1970). And see Alderman v. United States, 394 U.S. 165, 171–176, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

47. Miller v. United States, *supra* note 34, 357 U.S. at 312, 78 S.Ct. 1190; United States v. Harris, *supra* note 19, 140 U.S.App.D.C. at 278, 435 F.2d at 82; Gatlin v. United States, 117 U.S.App.D.C. 123, 130, 326 F.2d 666, 673 (1963).

48. Miller v. United States, *supra* note 34, 357 U.S. at 309, 78 S.Ct. 1190; United States v. Harris, *supra* note 19, 140 U.S.App.D.C. at 278–279, 435 F.2d at 82–83; Gatlin v. United States, *supra* note 47, 117 U.S.App.D.C. at 130, 326 F.2d at 673.

■ It is now well settled, however, that the announcement rule is not without exceptions.[49]  The Supreme Court has recognized that under some conditions strict observance of the statutory requirements may be excused,[50] and this court and those in other circuits have so held.[51]  We need not delineate the full panoply of judicially defined exemptions in this still developing area of the law.[52]  We do, however, examine one which we believe exonerated the officers here from serving notice of their purpose, if indeed they really did not do so.[53]

That a declaration of the purpose of an entry is unnecessary where the occupant already understands it appears as part of the American common law on the subject,[54] including the common law of the District of Columbia.[55]  And in Miller v. United States,[56] the leading Section 3109 case, the Supreme Court hypothesized the possibility "that, without an express announcement of purpose, the facts known to officers would justify them in being virtually certain that the [occupant] already knows their purpose so that an announcement would be a useless gesture." [57]  Decisions since *Miller*, including one of our own, have held that express notice of purpose is unnecessary where from the officer's view of the situ-

49. For general discussions of the rule, see Shadoan, Law and Tactics in Federal Criminal Cases 78 (1964) ; Blakey, The Rule of Announcement and Unlawful Entry : Miller v. United States *and* Ker v. California, 112 U.Pa.L.Rev. 499 (1964) ; Note, Announcement in Police Entries, 80 Yale L.J. 139 (1970).

50. Sabbath v. United States, *supra* note 28, 391 U.S. at 591 n. 8, 88 S.Ct. 1755 ; Ker v. California, *supra* note 18, 374 U.S. at 39–40, 83 S.Ct. at 1632–1633 (opinion of Justice Clark), 47, 54–55, 60–63, 83 S.Ct. at 1636, 1640–1641, 1643–1645 (opinion of Justice Brennan) ; Wong Sun v. United States, *supra* note 40, 371 U.S. at 483–484, 83 S.Ct. 407 ; Miller v. United States, *supra* note 34, 357 U.S. at 309, 310, 78 S.Ct. 1190.

51. See Bosley v. United States, *supra* note 40, 138 U.S.App.D.C. at 268–269, 426 F.2d at 1262–1263 ; United States v. Harris, *supra* note 19, 140 U.S.App.D.C. at 277–279, 435 F.2d at 81–83 ; Chappell v. United States, *supra* note 30, 119 U.S. App.D.C. at 359–360, 342 F.2d at 938–939.  See also the cases cited *infra* note 53.

52. See note 53, *infra*.

53. Other exceptions have been recognized in exigent situations, as where an announcement poses a danger to the officer, see Ker v. California, *supra* note 18, 374 U.S. at 40, 83 S.Ct. at 1633 (opinion of Justice Clark), 58, 83 S.Ct. at 1642 (opinion of Justice Brennan) ; United States v. Harris, *supra* note 19, 140 U.S. App.D.C. at 277–279, 435 F.2d at 81–83 ; United States v. Garcia Mendez, 437 F.2d 85, 86 (5th Cir. 1971) ; Gilbert v. United States, 366 F.2d 923, 931–932 (9th Cir. 1966), cert. denied,

388 U.S. 922, 87 S.Ct. 2123, 18 L.Ed.2d 1370 (1967) ; a danger of flight, Ker v. California, *supra* note 18, 374 U.S. at 40, 83 S.Ct. 1633 (opinion of Justice Clark), 47, 83 S.Ct. 1636 (opinion of Justice Brennan) ; United States v. Curtis, 138 U.S.App.D.C. 360, 363, 427 F.2d 630, 633 (en banc 1970) ; or a danger of destruction of evidence, see Ker v. California, *supra* note 18, 374 U.S. at 39–40, 83 S.Ct. 1632–1633 (opinion of Justice Clark), 47, 61–62, 83 S.Ct. 1636, 1643–1644 (opinion of Justice Brennan) ; Wong Sun v. United States, *supra* note 40, 371 U.S. at 484, 83 S.Ct. 407 ; Masiello v. United States, 115 U.S.App.D.C. 57, 58–59, 317 F.2d 121, 122–123 (1963) ; United States v. Burruss, 306 F.Supp. 915, 920–921 (E.D.Pa.1969).  Still another, but one hardly involved in the instant litigation, has been found to exist where the victim or some other person is in peril.  See Ker v. California, *supra* note 18, 374 U.S. at 40 n. 11, 83 S.Ct. 1623 (opinion of Justice Clark), 47, 55 (opinion of Justice Brennan) ; Wong Sun v. United States, *supra* note 40, 371 U.S. at 484, 83 S.Ct. 407.  See also the discussion in Wayne v. United States, 115 U.S.App.D.C. 234, 239–243, 318 F.2d 205, 210–214, cert. denied, 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963).

54. See, *e. g.*, People v. Martin, 45 Cal.2d 755, 290 P.2d 855, 858–859 (1955) ; Wilgus, Arrest Without a Warrant, 22 Mich. L.Rev. 541, 798, 802 (1924).

55. Accarino v. United States, *supra* note 39, 85 U.S.App.D.C. at 401, 179 F.2d at 463.

56. *Supra* note 34.

57. 357 U.S. at 310, 78 S.Ct. at 1196.

ation the occupant must surely have known why admittance into a habitation was desired.[58] And in Ker v. California,[59] four members of the Supreme Court expressly subscribed to an exception to the Fourth Amendment notice mandate "where the persons within already know of the officers' authority and purpose." [60]

Additionally, in *Bosley v. United States*,[61] we concluded that in particular circumstances *Miller's* "useless gesture" exception [62] might come into play even though the occupant is oblivious to the presence, and so to the objective, of police officers seeking entry. In that case officers, after knocking at the entrance to a suspect's apartment and drawing no response, saw through the partially open door that he was asleep. We realized that prior application of the "useless gesture" exception had involved instances where "the arresting officers were justified in being virtually certain that the person to be arrested knew their purpose. . . ." [63] We reasoned, however, that "[s]ince [the suspect] had not been awakened by their knocking, the officers could reasonably have concluded that further knocking or verbal announcement would be a 'useless gesture.'" [64] To have stated their purpose

"before entry," we said, "would have been a useless gesture as the person the statute is designed to protect, the occupant, was asleep and the indications to the officers were that he was not capable of hearing them as he had not been awakened by their knocking." [65]

■■ Our evaluation of the circumstances surrounding the entry in the case at bar [66] persuades us to the conclusion that it falls well within one or more variations of the "useless gesture" exception. We may profitably summarize the relevant circumstances at this point. Miss Summers watched the brown-shirted robber as he ran with the snatched purse into the adjacent apartment building. Just a bit later, Taylor saw a brown-shirted man flee from that building over the back fence and through the alley in the rear. Mrs. Filmore, almost bowled over by a man racing along the next street over, saw him take refuge in a house on that street.[67] The offense was reported immediately, the officers arrived within minutes, and within another few minutes had followed the trail marked by eyewitnesses from the scene of the crime to appellant's very doorstep. The combination of events reported to the officers and the short time lapse from the offense to their arrival [68] afforded

58. Chappell v. United States, *supra* note 30, 119 U.S.App.D.C. at 358–359 n. 4, 342 F.2d at 937–938 n. 4; United States v. Nicholas, 319 F.2d 697, 698 (2d Cir.), cert. denied, 375 U.S. 933, 84 S.Ct. 337, 11 L.Ed.2d 265 (1963); Wittner v. United States, 406 F.2d 1165, 1166 (5th Cir. 1969); Der Garabedian v. United States, 372 F.2d 697, 699–700 (5th Cir. 1967); United States v. Frierson, 299 F.2d 763, 766 (7 Cir. 1962), cert. denied, 371 U.S. 963, 83 S.Ct. 544, 9 L.Ed.2d 510 (1963).

59. *Supra* note 18.

60. 374 U.S. at 47, 83 S.Ct. at 1636 (opinion of Justice Brennan). We have no reason whatsoever to doubt the applicability of this exception to § 3109 since it was one of the common law exceptions. Sabbath v. United States, *supra* note 28, 391 U.S. at 591 n. 8, 88 S.Ct. 1755.

61. *Supra* note 40.

62. See text *supra* at note 57.

63. 138 U.S.App.D.C. at 268, 426 F.2d at 1262 (citations omitted).

64. *Id.* at 269, 426 F.2d at 1263.

65. *Id.* See also United States v. Perkins, 286 F.Supp. 259, 263–264 (D.D.C.1968), aff'd 139 U.S.App.D.C. 179, 432 F.2d 612 (1970).

66. See Jones v. United States, 362 U.S. 257, 272, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). See also Ker v. California, *supra* note 18, 374 U.S. at 40–41, 83 S.Ct. at 1633–1634 (opinion of Justice Clark), 60–61, 63, 83 S.Ct. 1643–1644 (opinion of Justice Brennan).

67. We know that Mrs. Filmore pinpointed the house for the officers, and the record indicates strongly that she told them more. See note 29, *supra*.

68. Officer Dowling estimated that appellant was brought out of the house about

the foundation for a conviction that their man was there.[69]

Before entering the house, Officers Dowling and Clark endeavored strenuously to elicit an answer at one or the other of its two exterior doors. Their knocking, their shouting—"police officer, open up"—continued in vain for five minutes. Plainly they gave notice, loudly and unambiguously,[70] that they were police officers[71] and that they sought admittance.[72] That notice resounded over and over but nothing happened. There was more than ample room for a natural deduction by anyone that the man inside was not going to respond.[73]

That, in sum, was the situation immediately prior to the officers' entry; there was, indeed, even more to the situation, as we shall later see.[74] The task at hand is to determine whether, upon a prudent calculation of the probabilities, an express announcement of the officers' purpose was destined to amount to more than an exercise in futility. By our appraisal, any hypothesis the circumstances might tolerate is intercepted by some branch of the "useless gesture" exception to the announcement requirement.

■ We turn first to the facet of "useless gesture" suggested in *Miller* and accepted in other decisions—facts known to officers which generate a firm assurance that their purpose is already known.[75] Here the crucial inquiry is whether the circumstances the officers faced provided a high caliber basis for a judgment on their part that their purpose was already known to the occupant. In treating that facet, we must, of course, act on the appearances as they were portrayed to the officers themselves.[76] The

---

15 minutes after the robbery was committed. A considerable portion of that period was consumed by the officers' efforts to summon the man inside to the door and by the ensuing floor-by-floor canvass of the premises. This meant that the officers' arrival at the house occurred very briefly after the man ran in.

69. Compare Chappell v. United States, *supra* note 30, 119 U.S.App.D.C. at 359, 342 F.2d at 938. See also Washington v. United States, *supra* note 30, 105 U.S. App.D.C. at 59–60, 263 F.2d at 743–744.

70. See text *supra* following note 31. Compare United States v. Mendoza, 433 F.2d 891, 895–896 (5th Cir. 1970), cert. denied, 401 U.S. 943, 91 S.Ct. 953, 28 L.Ed.2d 225 (1971).

71. See text *supra* at note 47.

72. Compare Chappell v. United States, *supra* note 30, 119 U.S.App.D.C. at 358–359, 342 F.2d at 937–938.

73. Indisputably, the officers were "refused admittance" within the meaning of the statute. See, e. g., Masiello v. United States, *supra* note 53, 115 U.S.App.D.C. at 58, 317 F.2d at 122; United States v. West, 328 F.2d 16, 18 (2d Cir. 1964); Martin v. United States, 341 F.2d 576 (5th Cir. 1965); United States v. Woodring, 444 F.2d 749, 750–751 (9th Cir. 1971).

74. See text *infra* at notes 80–83.

75. See text *supra* at notes 56–58.

76. We believe that the determination to be made is objective—whether the circumstances warranted a reasonably confident conclusion by the officers that their purpose was already known. See Miller v. United States, *supra* note 34, 357 U.S. at 310, 78 S.Ct. 1190; Bosley v. United States, *supra* note 40, 138 U.S.App.D.C. at 269, 426 F.2d at 1263. *Cf.* Ker v. California, *supra* note 18, 374 U.S. at 63, 83 S.Ct. 1623 (opinion of Justice Brennan), stating the view of four members on the constitutional test. We note, however, that the record also supports an affirmative subjective determination on that score. The officers were led to appellant's house by information supplied by eyewitnesses and they arrived there very shortly after the offense was committed. Unlike their previous stop at the newsboy's residence, where they tarried but briefly, they persisted at appellant's house until they were finally able to bring him out. The din and clamor at appellant's door making it clear that they were officers of the law seeking entry met only with silence within. Yet the officers did not leave to search elsewhere, but rather made their way in. And once inside they combed the premises methodically and thoroughly, continually announcing their presence and authority, until they flushed appellant out of his hiding place under the eaves of the roof. Appraising the officers' inner thoughts by their outward manifestations, we perceive no lack of their confidence in the suspect's awareness of their purpose.

most glaring of those appearances were the robber's flight from the scene of the crime into the house, his continued presence there when minutes later the officers arrived, and his adamant refusal to honor the entreaties of self-identified police officers to come to the door. We need not ponder a choice from among variations in judicial characterizations of the standard which the facts underlying an officer's belief in a suspect's awareness of his purpose must meet in order to render a declaration of purpose unnecessary.[77] Flight with fresh pursuit has long been the classic case pregnant with the probability that such a belief is fully warranted,[78] and we think that upon any realistic view of the combination of circumstances confronting the officers here, even the highest test of justification was met.[79]

We look next to the strand of "useless gesture" doctrine incorporating the common law exception activated when the objective underlying a sought-after entry is actually known by the occupant.[80]

That exception depends upon the capability of the evidence to show that the occupant was in fact aware[81] and in that connection it would seem that all conduct of the occupant relative to the inquiry—post-entry as well as pre-entry—is to be considered.[82] So appraised, the evidence here leaves no room for doubt as to appellant's realization of the mission of the officers at his doors. The crucial fact is that after the officers' prolonged knocking and shouting while outside and their continued announcement of presence and authority as they combed the house inside, appellant sought to escape detection by hiding in the crawl space under the eaves of the roof. For that we find no plausible explanation other than his understanding of the officers' purpose all too well.[83]

This case is unlike those in which the Supreme Court and this court have declined to apply the exception under discussion. In *Miller*,[84] officers knocked at the door to the suspect's apartment, replied "police" in a low voice when asked

---

77. See, e. g., Miller v. United States, *supra* note 34, 357 U.S. at 310, 78 S.Ct. 1190 (officer must be "virtually certain") ; Bosley v. United States, *supra* note 40, 138 U.S.App.D.C. at 269, 426 F.2d at 1263 (officer "could reasonably have concluded").

78. See cases cited *supra* note 58. See also Ker v. California, *supra* note 18, 374 U.S. at 54–55, 83 S.Ct. 1623 (opinion of Justice Brennan) ; Wilgus, Arrest Without a Warrant, 22 Mich.L.R. 541, 798, 804 (1924).

79. See, e. g., Ker v. California, *supra* note 18, 374 U.S. at 54–55, 83 S.Ct. 1623 (opinion of Justice Brennan) ; Chappell v. United States, *supra* note 30, 119 U.S. App.D.C. at 358–359, 342 F.2d at 937–938.

80. See, e. g., Ker v. California, *supra* note 18, 374 U.S. at 60–61, 83 S.Ct. 1623 (opinion of Justice Brennan) ; Miller v. United States, *supra* note 34, 357 U.S. at 310 n. 10, 78 S.Ct. 1190 ; Chappell v. United States, *supra* note 30, 119 U.S. App.D.C. at 358, 342 F.2d at 937 ; Accarino v. United States, *supra* note 39, 85 U.S.App.D.C. at 401, 179 F.2d at 463.

81. See Ker v. California, *supra* note 18, 374 U.S. at 60, 83 S.Ct. 1623 (opinion of Justice Brennan).

82. See *id.* (opinion of Justice Brennan), where events coming to light only after entry were used in support of the position that the occupants were not in fact aware of the presence or purpose of the police. The rule is different, of course, where the question is the assured belief of the officers rather than actual awareness of the occupant. See *id.* at 40–41 n. 12, 83 S.Ct. 1623 (opinion of Justice Clark). *Cf.* Miller v. United States, *supra* note 34, 357 U.S. at 312, 78 S.Ct. 1190.

83. Compare Chappell v. United States, *supra* note 30, 119 U.S.App.D.C. at 358–359, 342 F.2d at 937–938. It seems highly unlikely that appellant did not hear the officers, and if per-chance the officers felt so they must have concluded that any announcement of purpose would have been an idle gesture. Compare Bosley v. United States, *supra* note 40, 138 U.S. App.D.C. at 267–268, 426 F.2d at 1261–1262.

84. *Supra* note 34.

who was there, and barged in after the door was partially opened but almost simultaneously was sought to be closed.[85] In Hair v. United States, [86] as three officers converged on the suspect's house, a man opened the door, started out but then turned and ran back in with the officers in close pursuit. Similarly, the suspect in *Williams* v. *United States* [87] ran, and the one in Accarino v. United States [88] strolled, into his living quarters upon sight of officers who forced their way in moments later. The common difficulty in those situations was that the events relied on to demonstrate the officers' conviction of awareness of their authority and purpose were ambiguous, and consequently did not afford a sound basis for a conclusion that a proper announcement would have been useless.[89] As we have indicated, however, we view the situation now before us very differently.

It may be that, upon a full evidentiary exploration into the circumstances surrounding the officers' entry into appellant's house, the case at bar would merit a finding that Section 3109 was fully complied with, or would summon even more from recognized exceptions to the notice requirement.[90] Our call, however, is to avoid an unnecessary burden on the District Court. To us, the facts and circumstances already of record dictate but one result squaring with the precedents and consistent with common sense. The judgment of appellant's conviction is

Affirmed.

85. Indeed, as the Court pointed out, "[t]he Government [made] no claim . . . of the existence of circumstances excusing compliance" with the statute. 357 U.S. at 309, 78 S.Ct. at 1196.

86. 110 U.S.App.D.C. 153, 155, 289 F.2d 894, 896 (1961).

87. 107 U.S.App.D.C. 276, 276 F.2d 522 (1960).

88. *Supra* note 39.

89. Ker v. California, *supra* note 18, 374 U.S. at 57, 83 S.Ct. 1623 (opinion of Justice Brennan); Wong Sun v. United States, *supra* note 40, 371 U.S. at 483–484, 83 S.Ct. 407; Miller v. United States, *supra* note 34, 357 U.S. at 311, 78 S.Ct. 1190.

90. See note 53, *supra*.