

**In re M.M.S., Appellant.**

**No. 96–FS–144.**

District of Columbia Court of Appeals.

Argued Feb. 6, 1997.

Decided March 27, 1997.

Judith A. Lovelace, Washington, DC, appointed by the court, for appellant.

Rosalyn Calbert Groce, Director, Policy and Appeals Branch, Office of the Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel, Robert R. Rigsby, Deputy Corporation Counsel, and Sidney R. Bixler, Assistant Corporation Counsel, were on the brief, for appellee District of Columbia.

Before FERREN, TERRY, and STEADMAN, Associate Judges.

FERREN, Associate Judge:

M.M.S., a minor, appeals her adjudication of delinquency for assault with a dangerous weapon (ADW), D.C.Code § 22–502 (1996 Repl.), contending that the government failed to prove the elements of the crime with sufficient evidence. We conclude that, although the government met its burden of proving simple assault, it failed to prove beyond a reasonable doubt that M.M.S. had used a weapon. We therefore reverse and remand the case for the trial judge to vacate the adjudication of ADW, to enter an adjudi-

---

cation of the lesser included offense of simple assault, and to revise the disposition as appropriate.

## I.

Only one witness, the complainant C.C., testified at the proceeding on October 19, 1995. C.C. testified that on January 9, 1995 she had been walking home from school with a friend, C.H. As the two walked down Mississippi Avenue, S.E., a group of at least five girls from the same school, including M.M.S., approached them. M.M.S. then spoke, announcing that while C.H. "didn't have anything to do with this," C.C. would have to fight one of the other girls, T.S., "now." At first T.S. and C.C. fought; then another girl, L.S., joined in the fight on T.S.'s side. While C.C. was fending off the two attackers, she saw M.M.S. go behind her. She testified that she then "felt someone strike me on [my] back." Thereafter a police car came into view, and the attackers fled.

C.C. further testified that after everyone had left, "I ain't know I was stabbed ... I just thought, you know, I got hit in my back." She added, however, that as she walked down the street she "felt blood coming down [her] back." She then went with C.H. to C.H.'s aunt's house; C.H.'s aunt called an ambulance; and C.C. went to the hospital for "medical treatment." C.C. gave no further testimony about the nature of her wound or about the "medical treatment" she received.

After cross-examination by defense counsel and further questioning by the court, the judge found that M.M.S. had struck C.C. from behind during the course of the fight. Although C.C. (the only witness) had not seen M.M.S. strike her—she had testified only that she had seen M.M.S. go behind her and, soon thereafter, had felt someone strike her on her back—the judge found it reasonable to infer that M.M.S. had assaulted her. He drew that inference because C.C. had testified about the location of the other girls involved in the fight—"they wasn't close, as close as [M.M.S.] was to me"—and had said that all the others had been visible. The court also inferred that M.M.S. had used a knife, although no knife had been seen and no evidence of a knife was presented at trial.

The court found, finally, that M.M.S.'s involvement in the fight indicated the necessary intent and that the government, therefore, had proved all the elements of ADW.

## II.

"On a criminal charge, the government carries the constitutional burden of proving to the jury that the accused committed each element of the charged offense beyond any reasonable doubt.... So as not to displace the role of the [finder of fact], the court ... must review the evidence in the light most favorable to the government, giving full play to the right of the [finder of fact] to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence." *Curry v. United States,* 520 A.2d 255, 262–63 (D.C.1987). We will not uphold a conviction, however, if the factfinder "is required to cross the bounds of permissible inference and enter the forbidden territory of conjecture and speculation." *Id.* at 263.

■ For conviction of simple assault, the government must prove three elements: (1) "an attempt, with force or violence, to injure another"; (2) "the apparent present ability to effect injury"; and (3) "the intent to do the act constituting the assault." *Logan v. United States,* 460 A.2d 34, 36 (D.C.1983). ADW adds a weapons element to the three required for simple assault. *See Ruffin v. United States,* 642 A.2d 1288, 1295 (D.C. 1994); *Glymph v. United States,* 490 A.2d 1157, 1160 (D.C.1985).

■ In this case, C.C.'s testimony clearly was sufficient for a finding beyond a reasonable doubt that the three elements of simple assault had been satisfied. C.C. testified that, just before she felt a blow from behind, M.M.S. had run behind her. C.C. testified unequivocally that neither of the two attackers who initially engaged her in the fight had struck the blow to her back, and that the girls other than M.M.S. had been too far away to do so. The trial judge, therefore, properly could find that M.M.S. had struck a blow to the back, and that M.M.S.'s act of rushing forward during the fight demonstrated the necessary intent.

There is a serious problem, however, with the judge's inference that M.M.S. had used a knife or some other weapon. Generally, the government may prove the use of a weapon in one of three ways. Ideally, a weapon is recovered and introduced in evidence as the one allegedly used by the assailant. Alternatively, in the absence of a weapon in evidence, witnesses may provide direct testimony that they had seen the defendant with a weapon. *See, e.g., Rouse v. United States,* 402 A.2d 1218, 1222 n. 5 (D.C.1979); *Calhoun v. United States,* 369 A.2d 605, 606–07 (D.C. 1977); *United States v. Curtis,* 138 U.S.App. D.C. 360, 363, 427 F.2d 630, 633 (1970) (en banc). Finally, without direct evidence the government may prove the existence of a weapon by adequate circumstantial evidence. *See Paris v. United States,* 515 A.2d 199, 204 (D.C.1986) (unseen hard object, believed to be gun, thrust into ribs of victim, who was told to move and not turn around, and police in hot pursuit of robbers saw one of them with revolver). In the present case, no weapon was recovered, and the only witness, C.C., testified she never had seen a weapon. The government, therefore, had to rely on circumstantial evidence to prove the weapon.

There was no testimony that could provide an adequate basis for an inference that M.M.S. had a knife or any other weapon. In the first place, the government did not elicit testimony that C.C. had felt something like a weapon. *Cf. id.* To the contrary, C.C. testified: "I felt *something* on my back.... I felt someone strike me on my back.... I ain't know I was stabbed.... I just thought, you know, I got hit in my back." At most, therefore, the government proved a "hit" or a "strike," not necessarily with a weapon.

Nor did the government elicit testimony regarding the nature and extent of C.C.'s injury, such that evidence of a serious injury could have been used as proof that M.M.S. had wielded a dangerous weapon. *See Arthur v. United States,* 602 A.2d 174, 177–78

(D.C.1992).[1] There was no testimony about the nature of the wound beyond its location and, even then, the government failed to have the record reflect that location with any precision.[2] Furthermore, although both the witness and the government repeatedly used the word "stab"—with C.C. saying, for example, "after I found out I got stabbed"—the government elicited no testimony directly confirming that C.C. in fact had been stabbed or directly explaining why the witness believed she had been "stabbed" rather than assaulted in some other way.

There was testimony that C.C. had *"felt* blood coming down" her back (emphasis added) and that she had gone to the hospital by ambulance for unspecified "medical treatment." This testimony, however, does not provide enough information for a reasonable finder of fact to find beyond a reasonable doubt that the wound was so serious that a weapon must have been used, *e.g.,* that the wound was a cut that could only have been made by a knife or some other sharp instrument. The fact that C.H.'s aunt called an ambulance for C.C.'s transport to the hospital, while arguably suggesting serious injury (and thus perhaps use of a weapon), can just as reasonably imply no more than the precaution any responsible adult would take when there is some kind of injury to someone else's child, for whom the adult assumes responsibility, and other transportation may not readily be at hand. At most, therefore, the evidence established a blow to the back, not necessarily a stabbing or even some other kind of assault with a weapon, let alone a "dangerous" weapon. See *supra* note 1.

The lack of evidence sufficient for inferring the use of a dangerous weapon beyond a *reasonable doubt* distinguishes this case from all the decisions cited in the government's brief. In *Paris,* for example, we held that the complaining witness's testimony that he had felt an "extremely hard" object thrust into his ribs, which he believed was a gun, was sufficient to satisfy the dangerous weapon element because the felt object manifested

---

**1.** Appellant's offense was, of course, assault with a *dangerous* weapon. "A weapon is dangerous if it is used in a manner likely to produce death or great bodily injury." Criminal Jury Instructions for the District of Columbia, No. 4.07 (4th ed.1993).

**2.** [PROSECUTOR]: Can you point out on your back where you were stabbed?

[C.C.]: Right here.

The government failed to indicate for the record where the witness was pointing.

an "apparent ability to produce great bodily harm." 515 A.2d at 204. All the other cases the government cites from this jurisdiction in which no weapon was recovered are even more readily distinguishable from this case because witnesses testified that the defendant had used a weapon during the commission of the crime. *See Rouse*, 402 A.2d at 1219, 1222 n. 5 (complaining witness testified he was robbed at gunpoint and other witnesses heard gunshots); *Calhoun*, 369 A.2d at 606–07 (witnesses heard shots and saw defendants fleeing crime scene with pistol); *United States v. Daniels*, 141 U.S.App. D.C. 223, 224–27, 437 F.2d 656, 657–60 (1970) (witnesses testified that defendants had displayed guns in threatening manner); *Curtis*, 138 U.S.App. D.C. at 363, 427 F.2d at 633 (complaining witness testified that he had been robbed "at gunpoint").

In the present case, the complaining witness never testified that she had felt anything consistent with a weapon against her back or even that she had feared that M.M.S. would use a weapon against her. Indeed, her testimony was to the contrary: she had felt no weapon at all.

The government relies on two decisions from other jurisdictions that also are manifestly distinguishable from the present case. In *People v. Fosselman*, 33 Cal.3d 572, 189 Cal.Rptr. 855, 659 P.2d 1144 (1983) (in bank), the police recovered a knife shown to have belonged to the defendant. The complaining witness testified, moreover, that she had felt a sharp object in her back, consistent with a knife, and that when she had reached behind her back she had cut her finger on the blade. *Id.* at 857–59, 659 P.2d at 1146–47. In *State v. Seefeldt*, 292 N.W.2d 558 (Minn.1980), the complaining witness testified that she had felt an object "sharp and pointed like a knife and she believed it was a knife." *Id.* at 562. The government also introduced photographs of the complainant's minor wounds consistent with use of a knife. *See id.* In both of these cases, therefore, as in *Paris* and the other cases cited from this jurisdiction, the government elicited testimony regarding the witness's fear of a weapon and evidence tending to show that a weapon had been used. Such evidence is conspicuously absent here.

The government's attempt to portray the sufficiency issue merely as a credibility question misses the point. There is no reason to question the trial judge's finding that C.C. was credible, but there is every reason to say that C.C.'s credible testimony did not touch enough on the weapon element for a finding, beyond a reasonable doubt, that M.M.S. was guilty of ADW.[3]

Accordingly, the judgment adjudicating M.M.S. delinquent for ADW is reversed, and the case is remanded for the trial court to enter a judgment adjudicating M.M.S. delinquent for simple assault and to enter an appropriate disposition. *See Jennings v. United States*, 431 A.2d 552, 555 (D.C.1981); *Wilson v. United States*, 358 A.2d 324, 325 (D.C.1976) (per curiam).

*Reversed and remanded.*

---

**3.** For the same reason, the government's effort to sustain the conviction on an aiding and abetting theory fails, even if we were to permit the government (as requested) to argue this theory for the first time on appeal. We do not doubt that the trial judge properly found that M.M.S. had participated in an assault. The government, however, did not meet its burden to prove that anyone had used a weapon.